FIRST NAT. BANK OF CHICAGO v. UNITED STATES.*

No. 6711.

Circuit Court of Appeals, Seventh Circuit.

March 29, 1939.

*Writ of certiorari denied 59 S.Ct. 1038, 83 L.Ed. ——.

James E. Murphy, Asst. Atty. Gen., William J. Campbell, of Chicago, Ill., and James W. Morris, Asst. Atty. Gen., for appellant.

John E. Hughes, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment of the District Court entered January 14, 1938, wherein the plaintiff, as administrator of the estate of John F. Jelke, was awarded the sum of $75,215.16, with interest thereon, as a refund of income taxes paid by John F. Jelke for the calendar year 1925. The suit, commenced January 9, 1937, under Section 24, Twentieth, of the Judicial Code, U.S.C., Title 28, Section 41(20), 28 U.S.C.A. § 41(20), was tried without a jury, and the court made findings of fact and conclusions of law.

While the defendant argued on the merits that no recovery should be had, yet it must be conceded, we think, that its principal defense is predicated upon two limitation periods provided by statute, one, determinative of the time in which a refund might be claimed (Section 284(b)(1), Revenue Act of 1926, 44 Stat. 66), and the other (Section 3226 Rev.St. as amended by Revenue Act 1926, § 1113(a), 44 Stat. 116), of the time for the bringing of a suit. Plaintiff, in meeting such defense, without apparent hesitation, advises us:

"Except in an endeavor to defeat a completely technical defense by technicalities and thus enable justice to prevail we would not raise these points which the United States has repeatedly raised to defeat just claims by taxpayers and war veterans, than whom none are entitled to greater consideration from it."

Hence, we are presented with a legal battle where, admittedly, the chief weapons employed are technicalities. Many a straw man is dragged into the arena and summarily demolished. We shall attempt no feat of resurrection. There are, however, questions of importance, while technical in character, to which we shall give consideration.

■ We are confronted in the beginning by plaintiff's preliminary motion to strike the Bill of Exceptions, renewed in its main brief and on oral argument, which we shall first consider because other questions involved have a dependency relation thereto. The motion is predicated upon the theory that there is no statute making provision for a Bill of Exceptions in a non-jury case other than those tried according to Section 773, Title 28 U.S.C., 28 U.S.C.A. § 773. It is defendant's position that this section may well be construed to include the instant situation, but irrespective of this, a full review is permissible by the provisions of Sections 225 and 226 of 28 U.S.C.A. It is important, in considering the matter, to keep in mind the statute which authorizes a suit of this character. By Paragraph (20), Section 41, Title 28 U.S.C., 28 U.S.C.A. § 41(20), commonly known as the Tucker Act, the Government has given its consent to suits against it in the District Courts, concurrent with the jurisdiction of the Court of Claims in similar matters. That paragraph expressly provides "all suits brought and tried under the provisions of this paragraph shall be tried by the court without a jury."

■ It is true, as argued, that under the common law, a judge could not judicially become the trier of the facts as that was the exclusive province of the jury. One of the early cases is that of Campbell v. Boyreau, 21 How. 223, 16 L.Ed. 96, the opinion of which was rendered prior to the enactment of Section 773. The court there pointed out that courts of the United States (page 226) "are regulated in their modes of proceeding according to the rules and principles of the common law." On the same page it is further stated:

"The finding of issues in fact by the court upon the evidence is altogether unknown to a common-law court, and cannot be recognised as a judicial act. Such questions are exclusively within the province of the jury; and if, by agreement of parties, the questions of fact in dispute are submitted for decision to the judge upon the evidence, he does not exercise judicial authority in deciding, but acts rather in the character of an arbitrator."

■ While the court held that questions presented by the evidence in a non-jury common law case were not reviewable, yet it was pointed out that the rule would not apply where non-jury trials were authorized by law. The instant suit, it will be noted, is predicated upon a statute which not only authorizes, but directs a trial by the court without a jury. Thus, it would seem apparent that any rule existing at common law, where the judge was merely an arbitrator, could not be applicable to a situation wherein the court was not only authorized to try the facts, but expressly commanded so to do.

In Campbell v. United States, 224 U.S. 99, at page 105, 32 S.Ct. 398, 56 L.Ed. 684, the court said:

"In this state of the statute law, the trial to the district court without a jury was in the nature of a submission to an arbitrator,—a mode of trial not contemplated by law, and the court's determination of the issues of fact and of the questions of law supposed to arise upon its special finding was not a judicial determination, and therefore was not subject to re-examination in an appellate court."

Thus, the restricted review in non-jury common law cases was because such a trial was "a mode of trial not contemplated by law." From this language it would seem that the rule has no application to a suit expressly authorized by law and which would not exist but for express statutory sanction.

The statement of the court in Essgee Company v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917, seems to be pertinent. On page 152, 43 S.Ct. on page 515, it is said:

"The review sought is of an order of the District Court in a special proceeding in which no jury can intervene. It likens itself in its appellate character to a review of cases in equity or in admiralty or of an order upon a writ of habeas corpus in which issues of facts are triable to the

court, and in which the review may properly involve a re-examination by the reviewing court of the whole record and of the findings of the court upon both the law and the evidence therein."

In Wessel v. United States, 8 Cir., 49 F.2d 137, the court was considering a case brought under the Tucker Act and its right to review the findings of fact as made by the Trial Court. In sustaining such right, the court on page 137 said:

"It is not a case under section 773, title 28, U.S.C.A., which provides for waiver of jury in civil cases by written stipulation.

"Section 226 of title 28 provides for a review, in suits of this nature in the Circuit Court of Appeals, of judgments of the District Court the same as other judgments therein, and section 764 provides that it is the duty of the trial court to cause a written opinion to be filed 'setting forth the specific findings by the court of the facts therein and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon.' "

■■ Under plaintiff's theory, the words "final decisions" as used in Section 225, include only questions of law involved in such decisions, which ignore all relation to the factual situation. Such theory cannot be sustained. That section, especially when considered with Section 226, in our judgment, permits a review by a Bill of Exceptions of such exceptions as may be properly preserved. Under plaintiff's theory, an issue of fact tried and determined by the court without the intervention of a jury is reviewable only when tried according to Section 773, which provides for such trials "whenever the parties, or their attorneys of record, agree to waive a jury by a stipulation in writing filed with the clerk, or by an oral stipulation made in open court and entered in the record." Under those circumstances, the findings made by the court "shall have the same effect as the verdict of a jury." The purpose of this statute, no doubt, was to enable the court, when it was desired by the parties, to act in a judicial capacity rather than that of mere arbitrator, which was its status at common law. The present case, by statutory mandate was tried by the court without a jury. Thus, the law makes mandatory, insofar as a non-jury trial is concerned, what is permissible under Section 773. To hold that under the

former a Bill of Exceptions cannot be considered while it may be under the latter would create an anomalous situation, certainly not intended and which we do not think exists.

Having concluded that the Bill of Exceptions is properly before us, we now proceed to a statement of such facts as seem material to the questions necessary to consider. On March 15, 1926, John F. Jelke filed his tentative individual income tax return for the calendar year 1925, and on May 7, 1926, his complete or final return for the same period. These returns reported an income tax of $89,865.06 which was paid in four equal installments on March 15, June 15, September 15 and December 15, 1926. On March 16, 1925, the taxpayer filed a gift tax return and paid a gift tax of $357,970.31, of which amount $15,240.87 was later refunded, leaving a balance of gift tax paid of $342,729.44. On January 12, 1928, the taxpayer filed a claim for the refund of this gift tax, which was rejected. He then instituted a suit to recover the same in the United States Court of Claims, which was decided against the taxpayer, the judgment in which became final May 15, 1934. March 12, 1930, the taxpayer filed a claim seeking a refund of $63,734.62, which was the amount of income taxes paid by him for 1925, less the sum of $15,240.87 theretofore refunded. This refund claim was predicated upon the theory that the gift tax paid in 1925 should have been deducted in computing his income taxes for that year. The Commissioner of Internal Revenue, by letter dated May 9, 1930, wrote the taxpayer as follows:

"Your claim for refund of $63,734.62, individual income tax for the year 1925, has been examined and will be rejected for the following reason:

"In accordance with Section 284(b) of the Revenue Act of 1926, claims for the year 1925 must be filed within three years from the payment of the tax. The claim was filed March 12, 1930 and the last tax payment was made December 15, 1926.

"The rejection will officially appear on a schedule to be approved by the Commissioner."

A schedule of rejection, dated June 13, 1930, was entered showing the rejection of the claim for refund and it appears the taxpayer was notified of such rejection. The taxpayer died on December 4, 1931, and the administrator of his estate with

the will annexed was substituted as claimant and is now the plaintiff.

On December 31, 1934, plaintiff's attorney wrote a letter to the Commissioner of Internal Revenue, which reads as follows:

"On March 12, 1930 John F. Jelke filed a claim for refund of 1925 income tax in the sum of $63,734.62.

"On May 9, 1930 you wrote him a letter bearing initials IT:AR:F:3-A, LJC, wherein you stated that in accordance with Section 284(b) of the Revenue Act of 1926 claims for the year 1925 must be filed within three years from the payment of the tax.

"In view of the decision of the Circuit Court of Appeals for the Fifth Circuit in United States v. Bibb Mfg. Co., 73 F.2d 367, it appears that this claim was filed in time and that four years after the payment of the tax were allowed in which to file it.

"I will be in Washington in the next ten days and ask that you hold a hearing on the merits of this case when I am there.

"When I arrive I will telephone you and ask you to fix a time at which the hearing may be held and I will bring with me the power of attorney from the estate.

"In said claim it was requested that the disposition of the claim await the outcome of the suit brought by the claimant to recover the gift tax. This suit was decided against the claimant by the Court of Claims in First Union Trust & Savings Bank v. United States, 5 F.Supp. 143. The decision in this case was rendered December 4, 1933. Claimant filed a motion for a new trial, which was denied, and the time for filing a writ of certiorari expired May 5, 1934, at which time the decision of the Court of Claims became final.

"From the foregoing it is obvious that it is now in order to consider the merits of the claim."

On January 4, 1935, a Deputy Commissioner of Internal Revenue wrote a letter to plaintiff's attorney, as follows:

"Receipt is acknowledged of your communication dated December 31, 1934.

"Careful consideration will be given to your communication and you will be further advised relative thereto at the earliest practicable date."

Thereupon, appellee's attorney, on January 10, 1935, paid a visit to the Bureau of Internal Revenue in Washington and sought out a Mr. Silcox, an employee of the Revenue Service, to whom the letter of December 31, 1934, had been assigned for reply. A Mr. Cogger, who was in the employ of plaintiff's attorney, accompanied him to the Revenue Department and a conversation was had among these three persons, which will be hereinafter referred to. On January 16, 1935, another letter was written to plaintiff's attorney by the same Deputy Commissioner who wrote the letter of January 4, 1935, in part as follows:

"Reference is made to your letter dated December 31, 1934, in which you request the reopening of a claim for refund of income taxes paid by John F. Jelke, Chicago, Illinois, for the calendar year 1925.

"The claim was disallowed on a schedule dated June 13, 1930, in view of the provisions of section 284(b) of the Revenue Act of 1926 prohibiting the allowance of a refund or credit after three years from the time the tax was paid in the case of a tax imposed by that act, unless before the expiration of such period a claim therefor is filed by the taxpayer."

The letter continues in a discussion of the applicable provisions of the Revenue Act from which it is concluded that there could be no reopening of the claim for the reason it was not filed in apt time. As a further reason for denial of the reopening the letter concludes as follows:

"Disregarding the contention with respect to the timely filing of the claim, the reopening is precluded by the provisions of Treasury Decision 4235 since the period of limitation for bringing suit expired June 13, 1932, or two years from the date the claim was disallowed. The Bureau is, therefore, constrained to deny your request."

The essential questions presented are:

"1. Whether the statutory period prescribed for bringing suit to recover taxes can be revived and renewed after it has expired.

"2. Whether the Commissioner in fact reopened the rejected claim for refund or reconsidered it on its merits.

"3. Whether the claim for refund was timely filed.

"4. Whether, in any event, appellee is entitled to recover on the merits."

Before considering the questions presented, however, it seems necessary to give consideration to plaintiff's contention that the findings of fact, as made by the court below, are not subject to review for

the reason that no exception was taken thereto in conformity with Paragraph 875, Title 28 U.S.C.A. It is argued by the defendant that this section has been superseded by Rules 46 and 52 of the present rules of Civil Procedure, 28 U.S.C.A. following section 723c. These rules were promulgated subsequent to the trial and would seem not applicable, although we do not so decide in view of· our conclusion that exceptions were preserved under the requirements existing at the time of the trial. Immediately upon the conclusion of the hearing, a colloquy ensued between the court and counsel in which it was suggested to counsel that each side tender findings of fact. Counsel for the defendant therewith submitted proposed findings of fact, as well as motion for judgment, and was assured by the court that opportunity would be given to file exceptions to any adverse rulings. Immediately thereafter, defendant filed requests for findings of fact, conclusions of law and a motion for judgment. Exceptions to adverse rulings were requested in the following language:

"Defendant respectfully requests that an exception be allowed and hereby excepts to any finding of facts or conclusions of law contrary to those above requested, or to the failure to make any finding of fact or conclusion of law above requested."

In defendant's motion for judgment, the request for exceptions was in the following language:

"In the event that the Court overrules the defendant's foregoing motion for judgment or any of the specific grounds therein set forth, the defendant respectfully excepts and prays that it be allowed an exception or exceptions to such action or ruling or rulings of the Court, and the defendant further excepts and prays that it be allowed an exception or exceptions to the action or ruling or rulings of the Court in making and entering any findings of fact or conclusions of law contrary to those requested by the defendant, or in failing to make any of the findings of fact or conclusions of law requested by the defendant."

Thereafter, on December 27, 1937, without notice to either party, the court made findings of fact and conclusions of law as proposed by the plaintiff and entered judgment thereon. This judgment order did not provide for exceptions and on January 14, 1938, on defendant's motion that the exceptions requested had not been allowed, the District Court vacated its judgment order and made and entered another order, which reads in part as follows:

"The defendant's exceptions to the refusal of the court to grant the defendant's request for findings of fact and conclusions of law are hereby allowed.

"The defendant's exception to the court's refusal to allow the defendant's motion for judgment is hereby allowed."

▮▮▮ Paragraph 875 of 28 U.S.C.A., with reference to the time and manner of taking exceptions, has often been construed by the courts. Many of such cases are cited and relied upon by plaintiff.[1] It would serve no useful purpose for us to enter into an analysis of such cases. Without doubt, the general rule is that exceptions to special findings of fact and rulings of law must be taken at the time and during the course of the trial, and that exceptions taken to such findings and rulings, after final submission of the case, are not seasonably taken and will not be reviewed by an Appellate Court. The purpose of the rule, however, as stated in United States v. Atkinson, 297 U.S. 157, on page 159, 56 S.Ct. 391, on page 392, 80 L.Ed. 555, is:

"This practice is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact."

▮▮▮ In the instant case, it is quite obvious that the Trial Judge was fully informed respecting the specific questions involved, both of fact and law. Not only did the court advise defendant that exceptions would be allowed to any adverse ruling upon its proposed findings and conclusions, but when they were denied and judgment entered in the absence of defendant's counsel without such allowance, the court vacated its judgment for the express purpose of entering a new judgment to which exception might be had, and it is certain from

[1] Law v. United States, 266 U.S. 494, 496, 45 S.Ct. 175, 69 L.Ed. 401; Grand Trunk Railway Co. v. Ives, 144 U.S. 408, 415, 12 S.Ct. 679, 36 L.Ed. 485; United States v. Dickinson, 1 Cir., 95 F.2d 65, 67; San Feliz v. Bank of Nova Scotia, 1 Cir., 74 F.2d 338, 340.

the language employed, that the court intended and defendant so understood, that it was allowed exceptions to all adverse rulings, not only as to the findings of fact and conclusions which it had proposed, but as to each of the findings and conclusions which were adopted by the court. We conclude, therefore, that the denial of all findings and conclusions as proposed, as well as those allowed, are properly before us for review.

In our view this controversy must be determined largely by the court's denial of Finding of Fact No. 5 as proposed by the defendant, and the Finding of Fact No. 8 as proposed by the plaintiff. The former is "this suit was begun more than five years after the taxes sought to be recovered were paid and more than two years after final disallowance of the claim for refund." The latter is:

"On January 10, 1935, the Commissioner of Internal Revenue held a hearing on the merits of said refund claim filed by John F. Jelke and subsequent to the said hearing on the merits, and on January 16, 1935, wrote the plaintiff's attorney a letter, a copy of which is annexed to the petition and marked 'Exhibit 5.'"

In connection with this finding and relevant thereto, is the court's conclusion of law No. 3:

"The hearing on the merits held on January 10, 1935, amounted to a re-opening and reconsideration of the refund claim and it was not finally rejected until the Commissioner's letter of January 16, 1935."

Section 3226 of the Revised Statutes, as amended by Section 1113(a) of the Revenue Act of 1926, 44 Stat. 116, provides that no suit to recover internal revenue taxes may be maintained until a claim for refund has been filed according to law, and that "no such suit or proceeding shall be begun * * * after the expiration of five years from the date of the payment of such tax * * * unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. * * *"

The instant suit was commenced January 9, 1937, so it is certain that it was not commenced within five years from December 15, 1926, the date of the last payment of the 1925 tax. Therefore, if plaintiff is entitled to recover, it is upon the theory that its suit was commenced within two years after the disallowance of the claim.

It is the defendant's contention, denied by the lower court, that plaintiff's claim for refund was rejected on or before June 13, 1930, and that on that date a schedule of rejection was entered in the Commissioner's office in conformity with its letter to the taxpayer under date of May 9, 1930, in which the taxpayer was advised that such claim would be rejected and made to officially appear on a schedule to be approved by the Commissioner. On the other hand, plaintiff disputes there was any disallowance of the claim in 1930, but even if so, the Commissioner, in conformity with plaintiff's request contained in its letter to the Commissioner under date of December 31, 1934, granted a further hearing on the merits of the claim, which was held in the Commissioner's office January 10, 1935, and that there was no final disallowance of the claim until subsequent to that time, and that the suit having been brought within two years of such final determination, the suit was aptly instituted.

That the claim was rejected in 1930, we think, is plainly disclosed by the record, and the court below was in error in refusing to so find. The taxpayer was definitely informed by the letter of May 9, 1930, supra, that the claim "will be rejected" and that such rejection "will officially appear on a schedule to be approved by the Commissioner." A formal schedule of such rejection was entered by the Commissioner on June 13, 1930. This schedule was admitted without objection and we see no reason why it should not be binding and controlling. Such reasoning is sustained in Savannah Bank & Trust Co. v. United States, Ct.Cl., 58 F.2d 1068, United States v. Burnet, 61 App.D.C. 275, 61 F.2d 916, and John F. Jelke Co. v. Smietanka, 7 Cir., 86 F.2d 470. Plaintiff argues, however, that these authorities have since been overruled by the Supreme Court, and cites United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619. True, the court in that case held that a letter from the Deputy Commissioner to the taxpayer advising him that his claim would be rejected and that the rejection would be officially announced in a schedule to be approved thereafter, was not sufficient, but that case, it seems to us, is clearly distinguishable from the instant case, in that, here, the Commis-

sioner's letter was followed by official action, of which the taxpayer had notice, that the schedule of rejection was in fact made. Plaintiff also relies upon United States v. Elgin Nat. Watch Co., 7 Cir., 66 F.2d 344, an opinion by this court. This case is not in point, however, as the Government there stipulated that the claim was not finally rejected until a certain date and the court merely held the Government to the date of rejection as stipulated.

Any doubt which may exist with reference to this question is completely dispelled by United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 285, 75 .L.Fd. 598. There, as here, the taxpayer was notified "that his claim would be rejected and that the rejection would officially appear on the next schedule to be approved by him." The taxpayer received no notice of the actual entry of the rejection schedule. The court quoted and discussed Section 3226, and on page 659, 51 S.Ct. on page 285, said:

"While the statute declares that the Commissioner within a specified time shall notify the taxpayer that his claim has been disallowed, it is nowhere stated that the Commissioner's failure to give the notice will in any event operate to extend the time for bringing suit."

It further, on the same page said:

"But it is also well established that suit may not be maintained against the United States in any case not clearly within the terms of the statute by which it consents to be sued. Eastern Transp. Co. v. United States, 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472; Price v. United States, 174 U.S. 373, 375, 376, 19 S.Ct. 765, 43 L.Ed. 1011. There is nothing in the legislative history of the provision to indicate an intention that the two-year period should not commence upon the disallowance of the claim or that it should be extended by the failure of the Commissioner to give the specified notice."

Thus, from what the Supreme Court there said, it seems certain that even the failure of the Commissioner to notify the taxpayer of an actual rejection of his claim, is insufficient to toll the running of the two-year statutory period within which suit must be brought. Nor do we think there is any merit to plaintiff's contention that the notice of disallowance was signed by a Deputy Commissioner rather than the Commissioner. Sabin v. United States, Ct. Cl., 44 F.2d 70; United States v. Chemical

Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L. Ed. 131; Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647. We have read the authorities cited in support of such contention and they are not applicable.

Plaintiff further argues that even though the court had found that the claim was rejected in 1930, the final result would not be changed in view of the finding that the Commissioner held a hearing on the merits in 1935 and thereafter finally rejected it. The defendant's answer to this contention is two-fold—first, that the two-year period in which the suit was allowable after rejection having expired, that no act of the Commissioner could have the effect of waiving such requirement; and, second, as a matter of fact, there was no reopening of the case and consequently no hearing upon its merits. It is argued under the first point that the claim having been rejected in June, 1930, the time for the commencement of suit expired in June, 1932, and that, even conceding plaintiff's letter of December 31, 1934, supra, was a request for a review on the merits, and that such a hearing was granted, that both the request and the hearing having been made long subsequent to the time when a suit could have been commenced, there was no authority or power vested in the Commissioner to permit such hearing and, therefore, any act of his in this respect could not revive a right to bring suit which had previously been extinguished. We likewise conclude that the position of the Government in this respect must be sustained.

In United States Trust Co. of New York v. United States, Ct.Cl., 23 F.Supp. 476, the court, after recognizing the right of the taxpayer to request the Commissioner for a reconsideration of his action at any time within the two-year period, following disallowance of the claim, on page 480 said:

"If the Commissioner possessed the right to reopen and reconsider a refund claim when suit to recover, because of a rejection of the same, is barred by limitation, he could, as said in the case of United States v. Garbutt Oil Co., 302 U.S. 528, 534, 58 S.Ct. 320, 323, 82 L.Ed. [405], 'defeat the only purpose of the statute and impose a liability upon the United States which otherwise would not exist.' In our opinion the plaintiff signally failed to avail itself of established remedies

within the time limited by law, and the petition will be dismissed."

In United States v. Garbutt Oil Co., 302 U.S. 528, 534, 58 S.Ct. 320, 82 L.Ed. 405, cited in United States Trust Company of New York v. United States, supra, it was held that the Commissioner was powerless to act on an untimely amendment to a rejected claim for refund since such action amounted to a waiver of the statutory requirement fixing the period within which claims must be filed. Referring to Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253, the court, in the Garbutt case, said on page 534, 58 S.Ct. on page 323:

"The opinion expressly recognized that no officer of the government has power to waive the statute of limitations and cited, in support of the proposition, Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128, saying: 'Such waivers if allowed would defeat the only purpose of the statute and impose a liability upon the United States which otherwise would not exist—consequences which do not attach to the waiver here.'"

In Phillips Co. v. Grand Trunk Western Ry. Co., 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774, in discussing a statute, the purpose of which was to prevent suits on delayed claims, by the provision that all complaints should be filed within two years, the court on page 667, 35 S.Ct. on page 446, said:

"Under such a statute the lapse of time not only bars the remedy, but destroys the liability."

If we are correct in our conclusion that the claim was rejected in 1930, then it follows, we think, that after two years from that time the claim was effectively barred and no act of the Commissioner could restore its vitality.

■ But though we be in error in our conclusion that the Commissioner was without authority by any act or conduct on his part, to revive the claim for refund, after the expiration of the two-year period, we are of the further opinion that the record is without substantial evidence to support the finding of fact as made by the Court to the effect that the Commissioner of Internal Revenue, on January 10, 1935, held a hearing on the merits of said refund claim. The court likewise was in error in its conclusion of law that the hearing held on January 10, 1935, amounted to a reopening and reconsider-

ation of the refund claim and that it was not finally rejected until the Commissioner's letter of January 16, 1935.

Plaintiff cites a number of authorities which hold under a variety of circumstances to the effect that where the Commissioner reconsiders the merits of a refund claim, the limitation on the taxpayer's right to sue does not begin to run until after the reconsideration. A discussion of such authorities would serve no useful purpose. None of them, so far as we discern, have held that such a rule is applicable where neither the hearing nor the request for the same took place until after the right to sue was effectively barred, and all of them have applied the rule to circumstances where there was a genuine hearing on the merits.

Assuming the Commissioner had the authority, which we have concluded he did not, we are not impressed with plaintiff's claim that a hearing on the merits was had. In fact, we are entirely convinced to the contrary. As was said in McKesson & Robbins v. Edwards, 2 Cir., 57 F.2d 147, 149, there must be a "de facto" re-examination, reconsideration and redecision of the issues raised by the claim for refund, and as said in Watts v. United States, 2 Cir., 82 F.2d 266, 267, there must be a "reconsideration on the merits and not merely a determination as to whether or not to reconsider." We shall not go into detail as to the facts concerning this alleged "hearing on the merits." We have heretofore quoted the letter from plaintiff's attorney to the Commissioner of December 31, 1934, and the prompt reply of the Commissioner under date of January 4, 1935. A careful reading of the correspondence, as well as the testimony of the employee in the Commissioner's office and that of the companion of plaintiff's attorney, leaves no room for argument but what the purpose, and the only purpose of the visit to the Commissioner's office was to lay the foundation for the pretense that a "hearing on the merits" was had. The evidence is just as convincing that no such hearing took place. The most that can be concluded from the correspondence and the testimony is that some consideration was given to the question as to whether or not there was any reason, occasion or authority to reconsider the claim. That none of the parties who participated in the meeting in the Commissioner's office January 10, 1935, could have believed or did believe that a "hearing on the merits"

916

was to take place, or did take place, is so patent as to admit of no serious dispute. Notwithstanding the finding and conclusion of the court to the effect that the Commissioner's letter to plaintiff under date of January 16, 1935, constituted a final rejection of the refund claim, the letter, itself, as we read and understand it, is a complete refutation of such conclusion.

To subscribe to plaintiff's theory with reference to the limitation period in which suit in such cases may be brought, would be to render nugatory the statute in this respect. To permit the evasion of the statute on any such pretended "reopening and rehearing on the merits" would accomplish the same result. It would preclude the Commissioner from extending to a citizen the ordinary courtesy of permitting him to enter his office and engage in a casual conversation, except at the hazard of reviving a claim long since outlawed. In order to properly protect the Government, we assume it would be necessary for him to barricade his office and deny to all taxpayers the right of an interview.

In view of what we have said, there is no occasion for us to discuss the numerous other questions presented and argued.

The judgment of the District Court is reversed.