344

## UNITED STATES v. BALTIMORE & O. R. CO.

### No. 4833.

Circuit Court of Appeals, Fourth Circuit.

Dec. 13, 1941.

Carolyn E. Agger, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to the Atty. Gen., and Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for appellant.

Henry W. Anderson, of Richmond, Va. (R. Kemp Slaughter, of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Conceding that the Baltimore and Ohio Railroad Company had overpaid its income tax by the sum of $274,981.41 for the year 1924, the Commissioner of Internal Revenue defends this suit to recover that amount with interest, on the ground that the suit is barred by the statute of limitations in that the claim for refund, except as to the sum of $23,436.72, was not filed within the statutory period. A claim for refund was filed within that period, which specified certain items and referred in general terms to all other items concerning which the taxpayer's knowledge was then insufficient to permit of specification. Amendments to this claim were filed after the expiration of the statutory period whereby the general items of the claim were made specific and the items of the overpayment in suit were set out. The question to be decided is whether these amendments should be regarded as proper amendments to the original claim or as new claims filed too late to form the basis of suit. The District Judge took the former view and entered a judgment for the plaintiff. 38 F.Supp. 83.

The Railroad filed a consolidated return for 1924, a voluminous and complicated document, showing a tax due of $1,957,181.89 which was paid in instalments, the last payment of $489,295.48 on December 15, 1925. The time for filing a claim for refund under the applicable statutes[1] began to expire on March 16, 1929, four years after the first instalment was paid, and completely expired on December 15, 1929, four years after the last instalment was paid.

On August 14, 1928, the Commissioner wrote to the taxpayer stating that an examination of its return had disclosed an overassessment for 1924, amounting to $134,696.60; and on August 31, 1928 the taxpayer entered a written protest stating that a correct restatement of its tax income would show a much larger overassessment

---

[1] See Sec. 281 of the Revenue Act of 1924, 43 Stat. 253, 26 U.S.C.A.Int.Rev. Acts, page 62; R.S. § 3226, 26 U.S.C.A. Int.Rev.Code § 3772.

for that year. The additional sum of $38,630.24 was claimed for prior years.

On January 24, 1929, the Commissioner wrote to the taxpayer that its income tax assessment for 1924 appeared to be $177,271.32 in excess of the amount due, since an audit of the taxpayer's return for that year, then in process, indicated that the income reported should be adjusted by certain itemized amounts, which left a net reduction of $1,418,170.50. The Commissioner's letter concluded with the following paragraph:

"The limitation imposed by law is about to expire as to the year involved, after which a refund or credit cannot be made of any amount ultimately found to have been overpaid unless a claim is filed before the expiration of such limitation. It is therefore suggested that you prepare a claim upon the enclosed Form 843, specifically setting forth in such claim the grounds or basis of the apparent overpayment as above indicated. The claim should be properly signed by a duly authorized person and sworn to before a notary public (or other officer authorized to administer oaths for general purposes) and should be filed immediately with the Collector of Internal Revenue for the district in which the tax was assessed or paid. The accompanying copy of this letter should be attached to the claim when filed."

In response to this letter, the taxpayer, on February 2, 1929, filed a claim for refund for the year 1924 and attached thereto the above mentioned letter from the Commissioner as part of the claim. The taxpayer made the following statement in the body of the claim:

"Taxpayer, The Baltimore and Ohio Railroad Company, for itself and for its subsidiary companies embraced in its consolidated corporation income tax return for the calendar year 1924, asserts that its income tax returns for the year 1924 have been audited by the Commissioner of Internal Revenue, but that taxpayer has not received a final report or assessment of taxes based on said audit and is therefore unable to specify in detail all the items as to which claims for refund or abatement of assessment should or will be filed. Taxpayer further asserts that it is in receipt of a letter from C. B. Allen, Deputy Commissioner of Internal Revenue, dated January 24, 1929, bearing symbols IT:AR:RR-TGB, a copy of which letter, furnished by the Deputy Commissioner, is attached hereto and made a part hereof, and from which it is evident that the Commissioner of Internal Revenue admits that this taxpayer and its subsidiary companies, have overpaid taxes for the year 1924 in an amount not less than $177,271.32, wherefore the Baltimore and Ohio Railroad Company, for itself and its subsidiaries included in its consolidated corporation income tax return for the calendar year 1924, asserts that income tax has been unlawfully assessed and collected on the following items and other items of which taxpayer is without sufficient knowledge to incorporate herein, viz:

The Baltimore And Ohio R. R. Co.

| | |
|---|---:|
| Adjustment of taxes | $ 5,061.90 |
| Sale of Sandy Valley & Elkhorn Railway and Millers Creek Railroad | 1,615,021.22 |
| Bonds purchased for Sinking Fund | 2,390.00 |
| Excessive profit on sale of property | 1,702.50 |
| Adjustment-Daviess County Fuel Company dissolution | 10,600.30 |
| The Staten Island Railway Co. | |
| Loss on retired road omitted | 457.60 |
| | $1,635,233.52 |

"By reason of the facts and circumstances hereinbefore recited, and of others not now apparent, The Baltimore and Ohio Railroad Company for itself and its subsidiaries included in the consolidated corporation income tax return for the year 1924 hereby makes claim for a refund of taxes paid of not less than $177,271.32."

The investigation of the Commissioner related amongst other matters to a question that had been pending before the Board of Tax Appeals since 1928 as to whether the profit from the sale of the subsidiary roads mentioned in its claim for refund was income in 1923 or in 1924. On February 2, 1932 the parties stipulated that $1,444,892.17 of this profit belonged to 1924, and this had the effect of reducing the over-assessment proposed by the Commissioner as above stated. This action led to the filing of an amended claim on January 24, 1936, as hereinafter set out.

Meanwhile the Commissioner's audit for the year 1924 was still in progress, and in November 1934 the Bureau of Internal Revenue raised the question of the allowance to the taxpayer of deductions from

gross income for retirement and abandonment of property and equipment. The taxpayer was requested to furnish information in regard to the matter, and did so. The period involved included the year 1924. Information was furnished by the taxpayer from time to time up to 1939 and the audit continued with many conferences and many letters affecting the taxpayer's income. No question, however, was raised in respect to the refund claim of February 2, 1929, nor as to the amendments thereto presently to be considered. As a result of the investigation, the Commissioner approved a new and larger rate of depreciation for 1924 and also eliminated certain items of retirement and abandonment, with the result that an overstatement of net income in the sum of $1,672,866.84 and an overpayment of tax in the sum of $248,662.36 were shown. These sums were subsequently revised by the Commissioner to an overstatement of net income in the sum of $1,898,477.35 and a net overpayment of tax of $275,337.36.

On January 24, 1936, the taxpayer filed an amended claim for refund for the year 1924 reducing the amount from $177,271.32, as claimed on February 2, 1929, to the sum of $39,554.01. This reduction was arrived at by adding certain items to the overpayment indicated by the claim of February 2, 1929, and by deducting therefrom that part of the profit on the sale of the subsidiaries allocable to the year 1924, as provided in the stipulation of February 2, 1932. The amended claim was stated to be an amendment without withdrawal of the original claim, substituting certain amounts and specifying the particular grounds for refund as determined on the filing date. Attached to the amended claim was a copy of the claim of February 2, 1929, which was referred to as a general claim, upon which no hearing had been held and no action had been taken.

On January 19, 1938, the taxpayer filed an amended claim for refund for 1924 with the Collector of Internal Revenue in the sum of $248,662.36, in order to include the findings of the audit in respect to depreciation insofar as it had then progressed. This amended claim was also stated to be without withdrawal of the claim filed February 2, 1929. The increased amount was due to the assertion of an additional sum for depreciation on the railroad's equipment. The amended claim further stated that:

"Prior to rejection of the claim of February 2, 1929 the question of depreciation under T.D. 4422 was raised by the Internal Revenue Bureau. Exhaustive investigation with respect to this has been made by the Commissioner with the result that the claim of February 2, 1929 is hereby amplified by amendment under the provisions of Commissioner's Mimm. 4092 of October 30, 1933, C.B.X. 11-47-6520. The facts supporting this item have been verified and approved by the Bureau. The claim of February 2, 1929 has not been rejected as of the date of filing this claim."

The Bureau of Internal Revenue subsequently found, as we have seen, that the correct amount of the overpayment was $275,337.36. The parties have agreed that in the event the judgment of the District Court is affirmed, the correct principal amount of the judgment is $274,981.41, which results from certain agreed adjustments in the aggregate sum of $355.95. None of the three claims filed by the taxpayer was rejected. But on March 5, 1940, the taxpayer was advised by the Bureau that in the opinion of its chief counsel the statute of limitations barred any refund for the year 1924 in excess of $23,436.72.

This summary of the facts discloses that the claim for refund in suit was originally filed on February 2, 1929, before the bar of the statute had fallen; and that it was filed at the suggestion of the Commissioner of Internal Revenue who, being in the midst of an audit for the tax year in question, furnished to the taxpayer certain items on which a claim might be based, and pointed out that no refund could be made of any amount "ultimately found to be overpaid" unless a claim should be filed before the expiration of the period of limitations. As filed, the claim specified the items furnished by the Commissioner and asserted that the taxpayer had not received a final report of the Commissioner's audit and was therefore unable to specify all the items of the claim. The claimant, therefore, asserted that the income tax had been unlawfully assessed and collected on other items of which the taxpayer had insufficient knowledge to incorporate in the claim and made claim for refund of not less than the sum of the items specified.

After the filing of the claim, the audit continued and it was discovered that a large part of the profit from the sale of certain subsidiaries should be allocated to

the year 1924, and the parties entered into a stipulation to this effect on February 2, 1932. Subsequently, on January 24, 1936, the taxpayer filed an amended claim in a reduced amount, giving effect to the added income in accordance with the stipulation. The new claim was filed as an amendment and without withdrawal of the original claim. In the interval between the last mentioned dates, the audit continued accompanied by conferences and letters between the parties. It finally disclosed that changes in the depreciation allowance of the taxpayer should be made, and these changes increased the overpayment of the tax and led to the filing of the second amended claim of January 19, 1938 in an increased amount. This third claim was also filed as an amendment and without withdrawal of the original claim. The amount of the overpayment indicated was subsequently increased in the further progress of the audit and is the sum for which the present suit is brought. No rejection of the original or of either of the amended claims was ever made by the Commissioner.

We have then in this suit a claim, filed in due time, which was specific in respect to certain items of which the taxpayer had knowledge, and general in respect to other items as to which both the Commissioner and the taxpayer expected to receive additional definite information from an audit then in progress; and we have amendments of this claim filed after the expiration of the period of limitation which set out additional specific items as the result of the information so received.

The principles which govern this case have been considered in several decisions of the Supreme Court. In United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619, a general claim was filed in due time which merely stated that there had been an overpayment of tax of a named amount, without specifying the supporting facts or reasons, as required by the Treasury Regulations. Upon receipt of the claim the Commissioner made an audit to pass upon the merits, and ascertained an overpayment in excess of the amount claimed. After the expiration of the period of limitations the taxpayer was notified that his taxes had been readjusted in accordance with the audit and certificates of overassessment were to be issued. The taxpayer then filed new claims setting out the facts in detail. Subsequently the Commissioner gave notice of rejection, basing his ruling on the ground that the

claim as first filed was defective and irregular. Reference was made in the opinion of the Supreme Court to the analogies suggested by pleadings in a law suit, and to the increasing liberality of the courts in fixing the limit of permissible amendment; but caution was given that the realities of administrative practice must be kept in view. It was held that since the claim had been considered on its merits and had not been rejected for insufficiency before it was corrected, the amendment was proper although filed after the time when a wholly new claim would have been barred.

In United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633, the Commissioner made an assessment of an additional tax after the taxpayer had paid the tax shown by the return. The taxpayer paid part of the additional tax and filed a claim for abatement of the balance. The Commissioner then made an examination into the taxpayer's affairs, and before it was finished, the taxpayer, being fearful that the time would go by in which claims for refund were due, filed a claim for a large amount "in terms of sweeping generality", stating that there had been no final audit and that the purpose of the claim was to safeguard the taxpayer's rights. The claim contained no statement of the grounds upon which it was based, and no such statement was made until an amended claim was filed after the time had passed. In the meantime, the Commissioner had disposed of the claim for abatement but not of the claim for refund. After the receipt of the amendment, the Commissioner proceeded to consider the claim for refund on its merits and hearings were held at which the taxpayer gave evidence. The Commissioner finally found that the taxpayer's invested capital could not be satisfactorily ascertained, and that a special assessment, as permitted by the statutes, should have been made; but he rejected the claim on the ground that the first claim was indefinite and the amendment thereof was too late. The court held that the amendment was permissible, pointing out that the very generality of the original claim required the Commissioner to go into the question of invested capital, and that therefore the specific amendment called attention to no matter that was not covered by the required investigation.

In United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398, the taxpayer paid the income tax shown by

the return, which erroneously included an item of dividends as current income which should have been treated as giving rise to a capital gain of smaller amount. The Commissioner discovered the mistake and notified the taxpayer. In the meantime, the taxpayer had filed a claim for refund based on a loss incurred upon certain worthless stocks. Later, after the expiration of the period of limitation, the taxpayer filed an amended claim for refund of the amount of the overpaid tax resulting from the mistake in the return above mentioned. This was denied by the Commissioner because the amended claim was an independent demand, wholly unrelated to the original claim, and based upon an entirely different ground. This action was upheld by the Supreme Court. The court pointed out that the original claim, being specific and not general, called for no general audit of the taxpayer's affairs, and none was made; and that the Commissioner did not waive the regulation as to the particularity with which the grounds of the claim must be set forth. The court summed up the rule to be deduced from the prior decisions in the following language (302 U.S. at pages 523, 524, 58 S.Ct. at page 319, 82 L.Ed. 398):

"In all these cases the court found the analogies of pleading helpful in deciding whether the claim was in such form as to be subject to the proffered amendment at a time when a claim wholly new would have been barred; but the opinions point out that the analogy to pleading at law is not to be so slavishly followed as to ignore the necessities and realities of administrative procedure. Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim."

See, also, United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77

L.Ed. 626; Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 35, 53 S.Ct. 454, 77 L. Ed. 1011; Moore Ice Cream Co. v. Rose, 289 U.S. 373, 384, 53 S.Ct. 620, 77 L.Ed. 1265; Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293. Cf., United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405; Guantanamo Sugar Co. v. United States, Ct.Cl., 38 F.Supp. 252; Wrightsman Petroleum Co. v. United States, Ct.Cl., 35 F. Supp. 86.

We think that the propriety of the amendments in the pending case is shown by this analysis of the decisions. The original claim in part was general in character, and not the less so because it was made up in part of specific items. It was not rejected as insufficient because of its partial generality, or for any other reason. It reserved the right to increase the demand in the future. It did not mislead or delay the Commissioner, for he already knew that an investigation was needed and had begun to make it. He proceeded to complete the investigation into the taxpayer's affairs and ultimately found the facts necessary to a complete and correct computation, as his letter of January 24, 1929 suggested would be the case. The parties were in consultation throughout the search, and changes in the claim were made from time to time to correspond with the disclosures. It is not too much to say that amendment of the claim as the result of the continuing investigation was contemplated by the parties from the beginning, and no reason appears why amendments should not be filed so long as the correct amount of the tax was in doubt.

This conclusion is in accord with the instructions to Collectors of Internal Revenue, Internal Revenue Agents and Employees of the Bureau of Internal Revenue, issued on October 30, 1933, Mim. 4092, C. B. XII-2, 96. Reference was made by the Commissioner to decisions of the Supreme Court above mentioned and as the result it was announced that the following principles were established with reference to the sufficiency of claims for refund filed (like the original claim in suit) prior to May 1, 1929:

"(b) A timely claim for refund based upon one or more specific grounds may not be amended after the bar of the statute to include other and different grounds. If, however, the claim gives notice, although

in general terms, that aside from the specific grounds alleged, an overpayment has been made in reference to other items, the claim may, prior to rejection thereof, be amplified by amendment as to such other items."

Other regulations were promulgated to take effect on May 1, 1929, applicable to all claims filed on or after that date, and these regulations provided that a claim for refund must set forth in detail each ground upon which a refund is claimed with facts sufficient to show the exact basis, and that any claim which did not comply with these requirements should not be considered for any purpose as a claim for refund. T.D. 4265, VIII-1, Cum.Bull. 110 (1929).

The judgment of the District Court as modified by agreement of the parties is affirmed.