**SOCONY–VACUUM OIL CO., Inc., v.**
**UNITED STATES.**

District Court, S. D. New York.

Nov. 8, 1943.

R. Kemp Slaughter, of Washington, D. C., and John J. Manning, of New York City, for plaintiff.

Mathias F. Correa, U. S. Atty., of New York City (Laurence H. Axman, Asst. U. S. Atty., of New York City, of counsel), for defendant.

COXE, District Judge.

This is an action to recover an alleged over-payment of income taxes for 1925, amounting to $66,218.88, with interest from December 15, 1926.

The action is based on the refusal of the commissioner to allow any deduction from gross income on account of an asserted loss resulting from the partial liquidation in 1925 of the Tank Storage and Carriage Company, Ltd., a wholly owned British subsidiary of the plaintiff. This loss was stated in the original complaint at $315,-894.30, but the amount was increased by amendment at the trial to $509,376. The plaintiff computes the amount of the alleged overpayment at $66,218.88 by applying the effective tax rate of 13% for 1925 to the presently asserted loss of $509,376.

The government in its amended answer not only denies that the plaintiff sustained any loss in 1925 in connection with the partial liquidation of the Tank Storage and Carriage Company, Ltd., but challenges the right of the plaintiff to maintain the action at all on the ground that the claim for refund was not seasonably filed. It also sets up various claims for recoupment based on alleged under-payment of taxes by the plaintiff in other years than 1925.

The trial of the action took a wide range, and considerable evidence was introduced with respect to the 1913 value of the plaintiff's original investment in the Tank Storage and Carriage Company, Ltd. There was also considerable evidence relating to the government's claims for recoupment. The critical issue in the case is, however, whether the claim for refund was seasonably filed, and on that issue the facts have for the most part been stipulated, and may be stated briefly.

The plaintiff (formerly Standard Oil Company of New York) is a large corpora-

tion, with various foreign and domestic subsidiaries. On February 1, 1912, the plaintiff (then called Standard Oil Company of New York) purchased from the Standard Oil Company of New Jersey the entire outstanding stock of the Tank Storage and Carriage Company, Ltd. (hereinafter called "Tank Company") consisting of 10,000 shares. The amount immediately paid by the plaintiff does not appear, but it has been stipulated that on June 10, 1912, the Tank Company issued an additional 5,000 shares, which were subscribed for by the plaintiff, and that the plaintiff was then the owner of 14,997 shares of the 15,000 shares of the Tank Company, which it had acquired at a cost of $457,825.89. This stock had at the time a par value of 7 pounds for each share and it was fully paid.

The Tank Company was organized in 1888 under English law. The business for a number of years prior to February 1912, consisted of the operation of pipe lines and storage by its Russian branch, and during this period the operating loss amounted to about 2,000 pounds a year. After the acquisition of the control of the Tank Company by the plaintiff, the Tank Company purchased from a subsidiary of the Standard Oil Company of New Jersey a fleet of tankers and sailing vessels which had theretofore been operating in Asiatic waters. The Tank Company also arranged for the construction of other vessels. The funds required to finance this program were advanced by the plaintiff, and appear on the plaintiff's books as loans carrying 5% interest. As of December 31, 1912, the Tank Company owed the plaintiff on account of these advances, with interest, $2,514,121.85, and by December 31, 1913, the indebtedness had increased to $4,436,474.48.

In 1914, the par value of the stock of the Tank Company was changed from 7 pounds to 1 pound, and the plaintiff received 7 shares of the new stock for each old share held. The result of this conversion was that the plaintiff held 104,979 shares of the new 1 pound par stock in place of the 14,997 previously held. Later, in 1914, and in 1915, the capital of the Tank Company was increased to 1,500,000 shares of 1 pound par stock, and the entire amount of the increase, consisting of 1,395,000 shares was subscribed for at par, and taken by the plaintiff. The plaintiff used in part payment of these new shares the indebtedness then existing to it from the Tank Company.

In 1917, the Tank Company sold its entire Asiatic fleet to Standard Transportation Company, Ltd., another subsidiary of the plaintiff, for $5,734,595.45, and with this money and other funds to the credit of the Tank Company with the plaintiff, the Tank Company retired at par 1,375,000 of the shares which had previously been acquired by the plaintiff in 1914 and 1915. This left the Tank Company with only 125,000 shares still outstanding, all held by the plaintiff, with the exception of a few qualifying shares of directors. Of these 125,000 shares, 20,000 were acquired by the plaintiff in May, 1914, at a cost of $97,470, and the remaining 105,000 shares, less 21 qualifying directors' shares, were acquired in 1912 at a cost of $457,825.89.

In August, 1925, the Tank Company in proceedings in the English courts effected a reduction in its capital from 125,000 pounds, divided into 125,000 shares of 1 pound each, to 25,000 pounds, divided into 25,000 shares of 1 pound each. On this reduction, the Tank Company retired at par 100,000 shares held by the plaintiff, namely (1) 20,000 shares acquired by subscription in May, 1914, at a cost of $97,470, and (2) 80,000 of the 105,000 shares acquired in 1912 at a cost of $457,825.89.

It is the contention of the plaintiff that in the determination of profit or loss on the liquidation of these 100,000 shares of the Tank Company in 1925, the 20,000 shares are to be taken at cost of $97,470, and the remaining 80,000 shares at their fair market value on March 1, 1913, amounting to $897,718.40, or a total of $995,188.40 for the entire 100,000 shares. The amount received by the plaintiff on the liquidation of the 100,000 shares is $485,812.50. The loss asserted by the plaintiff is the difference between the two figures, or $509,375.90. (Amount stated in amendment to complaint $509,376.)

The plaintiff in its return for 1925 showed taxable income of $27,841,938.11, and a tax liability of $3,176,288.89. In this return, the plaintiff reported as one of the several items of non-taxable income the sum of $45,277.77 identified as gain resulting from the partial liquidation of the Tank Company. The amount of the indicated tax shown by the return was paid in instalments, the last one on December 15, 1926. The limitation period for the filing of a claim for refund was four years from December 15, 1926, or until December 15, 1930.

After the filing of the return, the commissioner caused an examination to be

made of the books and records of the plaintiff and its affiliated companies for the purpose of verifying the return, and on August 13, 1928, the revenue agent in charge in New York transmitted to the plaintiff a report of proposed adjustments, which indicated a deficiency in tax of $876.85. In this report, the revenue agent in setting forth "the reconciliation of the plaintiff's net income and the change in surplus" for 1925, made no change in the item of $45,277.77 reported by the plaintiff as non-taxable gain on the partial liquidation of the Tank Company.

On June 28, 1928, the plaintiff filed a claim for refund of $305,089.03, which was itemized, and reads in part as follows:

"This claim is specifically based on revision of the Company's accrual of credit for foreign income taxes taken on the return and now adjusted to accrual based on actual payments supported by receipts. .

This claim is also made to insure the Company, including its subsidiaries in its right to collect any refund of taxes erroneously or illegally collected for the calendar year 1925, notwithstanding the Statute of Limitations, which the Company may be entitled to receive under any departmental ruling or court decision now applicable or which may hereafter be made or rendered.

### Claim for Refund

| | |
|---|---|
| Tax credit per list of 8/11/27 (covering to 12/31/26).... | $682,818.33 |
| Tax credit per list of 12/31/27 | 61,450.76 |
| Tax Credit a/c Socony Proprietary (per statement in hands of U. S. Government) | 3,983.00 |
| | $748,252.09 |
| Less Tax Credits Claimed... | 443,163.06 |
| | $305,089.03". |

In February, 1932, the same revenue agent who made the previous examination in 1928 made an examination of the books and records of the plaintiff for 1922, 1924 and 1925, in order to ascertain certain facts having no relation to the retirement of the stock of the Tank Company in 1925. This was followed on May 26, 1932, by a letter from the commissioner to the plaintiff advising that there had been an over-assessment of tax in 1925, amounting to $255,705.67. In this letter, it was stated that consideration had been given to the statements contained in the claim for refund of $305,089.03 for 1925. It was also stated that the item of "$45,277.77, capital stock retirement, foreign subsidiary, shown in Exhibit A of revenue agent's report, covering 1925 as non-taxable income, has been included in taxable net income herein for the reason that no information has been submitted to determine whether this item is non-taxable".

On June 3, 1932, the plaintiff by letter to the commissioner protested "the disallowance of certain deductions claimed in its tax returns and the erroneous inclusion of additional items of income". This was followed on November 21, 1932 by a definite and specific protest with respect to the adjustments proposed in the letter of May 26, 1932. The protest, in so far as pertinent, states "The tax payer claims that the so called item of profit of $45,277.77 should be changed to a loss of $315,895.30. In the year 1925 the taxpayer received from The Tank Storage and Carriage Company Ltd., an English corporation, the sum of $485,812.50 in full payment for 100,000 shares of stock of The Tank Storage and Carriage Company Ltd. theretofore owned by the taxpayer and surrendered for retirement".

The protest then gives the figures on which the asserted loss of $315,894.30 is based, as follows:

| | |
|---|---|
| 80,000 shares acquired in 1912 and valued as of March 1, 1913 at ...:............... | $704,236.80 |
| 20,000 shares acquired in 1914 at cost .................. | 97,470.00 |
| Total cost ........... | $801,706.80 |
| Liquidating value ........... | 485,812.50 |
| Loss .................. | $315,894.30 |

Various schedules were attached containing supporting papers for the figures, etc.

On January 19, 1933, the refund claim filed on June 28, 1928, was before the commissioner without objection, but action had been taken thereon as appearing in the letter of May 26, 1932. On January 19, 1933, the plaintiff filed a second claim on Form 843 captioned "Amended Claim—Original Claim filed with the Collector of Internal Revenue, Second District, New York, June 28, 1928, and has not been acted upon heretofore". This second claim was in the amount of $440,250.90 "or such greater amount as is legally refundable".

It summarized the facts relating to the asserted loss of $315,894.30 resulting from the retirement of the stock of the Tank Company in 1925, and stated that the original claim filed on June 28, 1928, "not having been acted upon heretofore, is hereby amended for the specific reasons above set forth and also to protect the taxpayer in the recovery of all that portion of the tax paid by it in excess of the amount legally collectible".

The plaintiff thereafter had various conferences with the commissioner, at which the plaintiff's claims were considered, and, under date of November 30, 1936, the commissioner notified the plaintiff of his final determination of the plaintiff's tax liability for 1925 in the sum of $2,793,809.87 showing an over-assessment of $382,479.02. On December 1, 1936, the plaintiff received a certificate of over-assessment for 1925, with accompanying schedules. In the letter of final determination, the commissioner excluded from taxable income the item of $45,277.77. He did not allow any deduction for the loss of $315,894.30 asserted by the plaintiff in connection with the retirement of the stock of the Tank Company.

On December 3, 1936, the plaintiff's claims, filed June 28, 1928 for $305,089.03, and January 19, 1933, for $440,250.90, were disallowed, with a brief comment that "notice of disallowance or rejection of your claims, to the extent not previously allowed, is sent to you".

It will be seen from the above that two claims for refund were filed by the plaintiff, the first or original claim on June 28, 1928, prior to the expiration of the statutory period for filing claims, and the second (labeled "Amended Claim") on January 19, 1933, after the bar of the statute had fallen. It was only in the second claim that the plaintiff asserted any loss resulting from the retirement of stock of the Tank Company. The question is thus presented whether the second claim may be treated as an amendment of the first or original claim. This "depends upon the facts which an investigation of the original claim would disclose". Pink v. United States, 2 Cir., 105 F.2d 183, 187.

The original claim is for $305,089.03, and states that it is "specifically based on revision of the Company's accrual of credit for foreign income taxes." The items making up the amount claimed are listed, and each item is identified as a "Tax Credit" shown on a particular existing list or statement. There is no reference whatever in the claim to any loss resulting from the retirement of the stock of the Tank Company. This Tank Company loss of $315,894.30 was first mentioned in a letter to the commissioner, dated Nov. 21, 1932, and later asserted in the second claim filed on January 19, 1933. .

The original claim was a specific claim. It is so stated in the claim itself, and the amounts asked are for definite sums paid by the plaintiff on account of foreign income taxes. In examining the claim, the commissioner needed only to probe the facts relating to the payment of foreign income taxes; any investigation of a loss resulting from the retirement of the stock of the Tank Company was entirely foreign to such an inquiry. The second claim was clearly for new matter, which would not have been disclosed by an investigation of the original claim. I hold, therefore, that the second claim was not a permissible amendment of the original claim. United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L. Ed. 398; United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405; New York Trust Co. v. United States, 2 Cir., 87 F.2d 889, 113 A.L.R. 1287; Marks v. United States, 2 Cir., 98 F.2d 564; Pink v. United States, 2 Cir., 105 F.2d 183.

The plaintiff insists that the original claim should be treated as a general claim because it was filed at a time when the audit of the plaintiff's return was still in progress, and the plaintiff "could not specify in detail all the items for which claims should be filed". It is argued from this that the case falls within the doctrine of such cases as United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619, and United States v. Baltimore & O R. Co. 4 Cir., 124 F.2d 344.

In the Memphis Cotton Oil case, supra, a general claim was seasonably filed, merely stating that there had been an over-payment of tax of a specified amount without giving any facts. Upon receipt of the claim, the commissioner made an audit, and found an overpayment in excess of the amount claimed. The taxpayer was thereupon notified that its taxes had been readjusted in accordance with the audit, and that certificates of over-assessment would be issued. The taxpayer then filed, after the statutory period had expired, a new claim setting forth the facts in detail. The court held that the amendment was proper because the claim was general, and the commissioner

had considered the claim on the merits without objection, and had found that there was an over-payment. The amended claim was merely a particularization of the original general claim.

The Baltimore & O. R. Co. case, supra, is closely similar to the Memphis Cotton Oil case. In that case, the Baltimore & Ohio Railroad Company filed a consolidated return for 1924 covering many complicated transactions. The commissioner thereupon instituted a general audit which extended beyond the statutory period for filing claims. Just before this period expired, the commissioner wrote the taxpayer suggesting that a refund claim be filed. In response to this letter, the taxpayer filed in time a refund claim which was specific as to some matters, and general as to others. The claim stated that inasmuch as the taxpayer had not received a final report based on the audit, it was "unable to specify in detail all the items as to which claims for refund or abatement of assessment should or will be filed". [124 F.2d 345.] The audit continued after the filing of the refund claim, and resulted in findings showing a substantial overpayment. In the meantime, and after the bar of the statute had fallen, the taxpayer filed a number of amended claims giving the details of items developed by the audit. The court, following the ruling in the Memphis Cotton Oil case, held that the amendments were proper as merely specifying the details of what has been set forth in general terms in the original claim.

I do not think that these two cited cases have any application. In the first place, the original claim here is specific and not general; it, therefore, falls within the ruling in United States v. Andrews, supra. In the second place, the clause in the original claim that the claim was "made to insure the company, * * * in its right to collect any refund of taxes erroneously or illegally collected for the calendar year 1925" did not call on the commissioner to make a complete reaudit of the return; and the fact that the commissioner may have done so is immaterial. United States v. Andrews, supra, 302 U.S. at page 524, 58 S.Ct. at page 319, 82 L.Ed. 398. Finally, the commissioner in his audit did not make any investigation of the asserted loss resulting from the retirement of the stock of The Tank Company; he did not, therefore, waive the specification of such an item of loss even if he could have done so under the statute.

The complaint is dismissed with costs.