■ In the Matter of BROADWAY-111TH STREET ASSOCIATES, LLC, et al., Petitioners, v COMMISSIONER OF NEW YORK STATE DIVISION OF TAXATION AND FINANCE et al., Respondents. [812 NYS2d 661]—

Lahtinen, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained an assessment of real property transfer gains tax under Tax Law former article 31-B.

The gains tax on the sale of condominiums and cooperatives (*see* Tax Law former art 31-B) was repealed in 1996 (*see* L 1996, ch 309, § 171). The repealing legislation deemed all conversion plans final as of June 15, 1996, regardless of whether all units had been sold (*see* L 1996, ch 309, § 180 [b] [i]), and further provided that all claims for refunds of the gains tax must be filed by May 31, 1999 (*see* L 1996, ch 309, § 180 [c]). This proceeding implicates issues arising from that legislation.

Petitioners are the sponsors of numerous condominium and cooperative conversion plans and, under the terms of the plans, were required to deposit funds into reserve and working capital accounts. On May 26, 1999, petitioners filed their final returns and sought refunds totaling nearly $218,000 based upon their contention that they should have been permitted to reduce the calculation of consideration received for sold units by the entire amount contributed to the reserve and working capital accounts. In July 1999, the Division of Taxation and Finance (hereinafter Division) disallowed the claimed refunds, reasoning that the reduction for the reserve and working capital accounts must be allocated between sold and unsold units since those units not sold as of the repeal date would not be subject to any gains tax. Thereafter, petitioners requested conciliation conferences and, at that time, asserted a claim for an additional refund of over $1,315,000 based upon a recent decision of respondent Tax Appeals Tribunal in the unrelated proceeding of *Matter of 244 Bronxville Assoc.* (1999 WL 417891, 1999 NY Tax LEXIS 153 [1999]), in which the Tribunal permitted a taxpayer to apportion the original purchase price among units based upon a fair market methodology rather than the objective criteria test advanced by the Division. A conciliation conference was conducted in November 2000, and petitioners' requests were denied by conciliation orders issued in March 2001.

Following a hearing, an administrative law judge (hereinafter ALJ) upheld the notices of disallowance. The ALJ determined that the Division's allocation requirement regarding the reserve and capital accounts as to sold and unsold units was proper, that petitioners' claims for refunds based on *Bronxville* were

untimely since they were new claims (as opposed to amended claims) that would have required an entirely new investigation as to the fair market value of each unit, and that, in any event, petitioners failed to offer sufficient evidence of the fair market value of unsold units to establish claims under *Bronxville*. The Tribunal upheld the ALJ's determination. Petitioners commenced this proceeding in this Court pursuant to Tax Law § 2016 challenging that determination.

We consider first petitioners' argument that the Tribunal erred in failing to exclude the entire amount of money in the reserve and working capital funds from the calculation of petitioners' total consideration. Tax Law former article 31-B imposed a 10% tax upon, among other things, certain condominium and cooperative conversions. The tax, which was due upon the transfer of individual units, was calculated based on an apportionment of the original purchase price for the real property and anticipated total consideration under the plan (*see* Tax Law former § 1442; *see also* Tax Law former § 1440 [1] [a]; [5] [a] [i] [defining "consideration" and "original purchase price"]). The taxable "gain" was "the difference between the consideration for the transfer of real property and the original purchase price of such property, where the consideration exceeds the original purchase price" (Tax Law former § 1440 [3]).

A regulation in effect before the enactment of the tax repeal legislation provided that payments to a reserve or working capital fund did not have to be included in consideration (*see* 22 NYCRR former 590.38).\* That regulation, however, was premised upon the prior law in which all units would be subject to gains tax. With the repeal of that law, the regulation did not directly apply to the current situation where the sale of some of the units would not be subjected to any tax (*cf. Matter of Rivera v Travis*, 23 AD3d 942, 943 [2005]). A portion of the units in petitioners' buildings were not subject to tax because they were unsold at the time the tax repeal legislation deemed plans final, i.e., June 15, 1996. The Tribunal noted that permitting the deduction of the entire reserve and working capital funds

---

\* The regulation provided:

"Question: Are payments by the realty transferor to a reserve fund or working capital fund included in consideration?

"Answer: No, payments made to a reserve fund or working capital fund held by the cooperative corporation do not constitute consideration paid by the purchasers for occupancy, if such payments are required pursuant to the offering plan. Such payments are not included in consideration whether the realty transferor pay amounts directly to such funds on the transfer of shares or if part of the purchase price goes directly to such funds from the transferee of the shares."

amount against the portion of taxable sales that had occurred would result in a windfall or disproportionate tax advantage. The method approved by the Tribunal was consistent with a reading together of the former law and repealing legislation in that the reserve and working capital funds reduced the consideration calculated for sales that were taxable by an amount reflecting a proper allocation between taxed and untaxed units. We are thus unpersuaded that the Tribunal's allocation method was improper.

Nor are we persuaded by petitioners' assertion that its claim premised upon *Bronxville* was a timely amendment to the original claim for a refund. Petitioners' refund claim in May 1999 was limited to a dispute about the proper method of excluding reserve and capital funds from consideration for taxed units. The claim did not challenge the objective criteria method used by the Division to calculate the original purchase price. While *Bronxville* opened the door for a fair market analysis of the original purchase price, petitioners interjected that issue well after the filing deadline of May 31, 1999. Since the *Bronxville* issue asserted by petitioners involved a new and unrelated issue seeking a significantly greater refund that would entail additional investigation, the Tribunal properly rejected petitioners' characterization of this issue as merely an amendment to the claim and, instead, treated it as being a new claim made in an untimely fashion (*see United States v Andrews,* 302 US 517, 524-527 [1938]; *Socony-Vacuum Oil Co. v United States,* 52 F Supp 637, 640 [SD NY 1943], *affd* 146 F2d 853 [2d Cir 1945]). Moreover, upon review of the record, we find that, even if the issue had been timely advanced, the ALJ and Tribunal properly concluded that the evidence submitted by petitioners on the fair market value issue was insufficient.

Spain, J.P., Carpinello, Mugglin and Rose, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

