## UNITED STATES *v.* GARBUTT OIL CO.

No. 262. Argued December 9, 1937.—Decided January 3, 1938.

*Mr. Norman D. Keller,* with whom *Solicitor General Reed, Assistant Attorney General Morris,* and *Messrs. Sewall Key, Harry Marselli* and *Edward J. Ennis* were on the brief, for the United States.

*Mr. L. A. Luce,* with whom *Mr. John B. Milliken* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The issue in this case is similar to that presented in *United States* v. *Andrews, ante,* p. 517. The action was brought by the respondent in the District Court for Southern California to recover an alleged overpayment of in-

come taxes for 1919. There is no controversy as to the facts found by the trial court. The respondent, a California corporation, acquired a lease of oil property October 3, 1907. April 10, 1911, the directors resolved that all oil produced after January 1 of that year should be transferred in kind to the lessors to the extent of their royalty interest and to the company's stockholders pro rata to their respective holdings, so long as the latter should pay calls for money necessary to defray the company's expenses. The resolution remained in effect to and including the year 1919 and distribution of all oil produced was made accordingly. In its books of account and its return for income tax the respondent recorded at market value the oil produced and treated the difference between that value and the cost of production as income. The Commissioner of Internal Revenue followed the same method in computing taxable income. In its 1919 return the respondent disclosed a net income of $16,928.61 and a tax liability of $2,072.68 which was paid during the year 1920. The Commissioner, as the result of an audit, assessed an additional tax of $3,105.65 which was paid April 3, 1925.

March 30, 1929, within the four year period of limitations prescribed by the applicable statute,[1] the respondent filed a claim for the return of the additional tax so paid, based upon two grounds: first, that the respondent was entitled to an additional deduction of $12,500 for the amortization of the cost of a drilling contract with Union Oil Company by which the latter, in consideration of $250,000 par value of respondent's stock, agreed to provide expenses of developing the leased oil property, reimbursement to be made only out of oil produced; and, second, that, in respect of excess profits tax, its invested capital had been understated by failure to include the unrecovered cost of the same contract in the sum of $109,375.

---

[1] Revenue Act of 1926, c. 27, § 284 (a) (b) (1) (2), 44 Stat. 9, 66.

While this claim was pending, but subsequent to the expiration of the period of limitation, the respondent filed a "Statement of Garbutt Oil Company . . . for the purpose of perfecting and completing claim for refund covering alleged overpayment of income tax for the calendar year 1919." Therein the respondent asserted that it "now develops that a further reason exists in support of" the pending claim since, by distribution of oil in kind, the respondent realized no taxable income during 1919, and that "it therefore follows that even though the specific grounds set forth in the claim for refund are denied said claim should, nevertheless, be allowed in full," for the reasons set forth in the statement. Refund was demanded of the entire tax paid for 1919 ($5,178.33) "or so much thereof as is properly refundable within the statute of limitations." August 12, 1929, the Commissioner wrote the respondent, concerning the merits of the original claim and the amendment, stating that a refund of $3,105.65 would not be allowed but that a hearing could be had upon the proposed rejection if requested in writing. On October 4, 1929, a conference was held but it does not appear whether the merits of the amendment were discussed. November 13, 1929, the Commissioner advised the respondent that the claim would be rejected on the merits and that the new contention embodied in the statement filed would be rejected as it was not referred to in the timely claim and was presented only after the expiration of the period of limitations and after the expiration of the time allowed to perfect informal claims, pursuant to a Treasury decision. Formal rejection of the claim was made November 21, 1929.

The respondent brought suit for the recovery of the $3,105.65, it being admitted that the remainder of the tax paid for the year 1919 could not be recovered because not claimed within the four year period specified in the statute. At the trial the grounds of the refund

claim originally filed were abandoned and recovery was sought upon the basis of the statement filed after the expiration of the statutory period of limitation. The court held that the latter did not constitute an amendment of the claim originally filed and came too late although it also found that the Commissioner had considered the late contention on its merits. Judgment was entered in favor of the United States. The Circuit Court of Appeals reversed, holding the statement filed as an amendment was germane to the original refund claim and that both were grounded in substantially the same facts.[2] We granted certiorari to resolve alleged conflict of decision.

In view of what has been said in *United States* v. *Andrews, supra,* it is necessary only to inquire in the instant case whether the original claim was specific and the so-called amendment completely shifted to a totally different ground for refund.

· The transactions of the taxpayer which gave rise to its tax liability were exceedingly simple due to the fact that it had resorted to distribution of all the oil produced, partly to its lessors as royalty and partly to its stockholders in return for their advancing the corporate expenses. If it was liable for income tax the method of calculation it adopted was apparently the correct one.

Claim for refund was not filed until 1929 when the statute of limitations had barred refund of all payments made by the respondent except the amount of the additional assessment paid in 1925. In an effort to recover that much of the tax paid for the year 1919 the claim set out two grounds: first, that a deduction of $12,500 should be allowed for amortization of a drilling contract which the company had and, second, that its invested capital should have been increased by more than $100,000 to embrace the unrecovered cost of this drilling contract. The

---

[2] 89 F. (2d) 749.

claim directed the Commissioner's attention to these two items only. It gave him no notice that the taxpayer claimed not to have been in receipt of any income whatever for the taxable year. The documents would not naturally suggest any such claim for, as in *United States v. Henry Prentiss & Co.*, 288 U. S. 73, the ground asserted in the later demand was totally inconsistent with and involved a negation of that specified in the claim for refund. Before the Commissioner had acted on the claim for refund the respondent, in an effort to evidence continuity and identity of claim, filed its so-called statement perfecting and completing the claim for refund. This abandoned the grounds originally alleged in support of the claim. The position taken in the amendment was that the taxpayer had no income whatever and that if the Commissioner refused refund on the basis of a rejection of the deductions claimed from gross income in the original demand, he should find that the taxpayer's operations were not productive of any income to it.

In defense of the amendment the respondent says that it was claiming only the $3,105.65 paid in 1929 pursuant to the additional assessment; that in no event could it recover the entire tax paid; that if the original grounds for claiming refund .of payment of the sum in question had been held valid this would have been sufficient to require the refund of the whole of the sum, and the amended claim would have no different result. This contention is advanced to persuade us that, after all, the cause of action in this case was for the recovery of $3,105.65 as money had and received to the respondent's use, and that, therefore, there is no departure and no new cause of action asserted by the amendment. To adopt this view would be to disregard what was said in earlier cases to the effect that the analogies of pleading must not be pressed to such an extent as to disregard the realities of administrative procedure. The claim as filed called for no investigation

of the question whether the taxpayer's transactions gave rise to income. On the contrary, the grounds advanced assumed the receipt of income. The claim being thus specific the Commissioner was entitled to take it at face value and to examine only the points to which it directed his attention. It would be to disregard the natural course of procedure in the Bureau to suppose that grounds thus specifically asserted would direct attention to another at war with them.

The respondent urges that although the amendment was not timely, the Commissioner, in considering the merits of the position taken therein, waived any objection which might have been available to him that this position was not disclosed in the original claim. The contention is bottomed upon the fact that, in his letter of August 12, 1929, the Commissioner refers to the reasons advanced in the untimely statement. The argument confuses the power of the Commissioner to disregard a statutory mandate with his undoubted power to waive the requirements of the Treasury regulations. The distinction was pointed out in *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, 71, wherein it was said: "The line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulation is to facilitate research." In the cited case, and others decided at about the same time, we held that, while the Commissioner might have enforced the regulation and rejected a claim for failure to comply with it in omitting to state with particularity the grounds on which the claim was based, he was not bound to do so, but might waive the requirement of the regulation and consider a general claim on its merits. This was far from holding that after

the period set by the statute for the filing of claims he had power to accept and act upon claims that complied with or violated his regulations. *Tucker* v. *Alexander,* 275 U. S. 228, cited by the respondent, is clearly distinguishable. There a timely claim was filed and disallowed. It alleged two specific grounds for refund. Suit was brought to recover the alleged overpayment and again reliance was placed on the same two specific grounds. At the trial of the action, and within the period of limitations, the taxpayer abandoned the grounds alleged in its claim and complaint and asserted a new ground. Counsel for the Government stated that the new question brought forward was the only one involved in the case and stipulated as to the amount to be recovered if the trial court should hold in favor of the taxpayer on this new ground. The court did so. On appeal the Government, for the first time, raised the point of the insufficiency of the claim for refund, and the Court of Appeals held that the new basis for the claim did not sustain recovery because reference had not been made to it in the refund claim. This court decided that there was an express waiver as to the form and contents of the claim and that counsel representing the Government had power, prior to the expiration of the period of limitation, to waive the objection that the supposed basis for refund was not disclosed in the claim. In so holding the court adverted to the fact that the Commissioner was not deceived or misled by the deficiency of the claim and that it was in the interest of justice that in the circumstances the claimant be not remitted to the resort of filing a new claim and pursuing it through the Bureau and the courts. The opinion expressly recognized that no officer of the government has power to waive the statute of limitations and cited, in support of the proposition, *Finn* v. *United States,* 123 U. S. 227, saying: "Such waivers, if allowed, would defeat the only purpose of the statute and impose a liability upon the United States

which otherwise would not exist—consequences which do not attach to the waiver here." 275 U. S. 232.

The statement filed after the period for filing claims had expired was not a permissible amendment of the original claim presented. It was a new claim untimely filed and the Commissioner was without power, under the statute, to consider it.

The judgment is

*Reversed.*