## SHANK AND SAPPINGTON, CO-EXECUTRICES U/W OF JESSIE B. GROVE *v.* SAPPINGTON, TRUSTEE U/W OF JESSIE B. GROVE

[No. 489, September Term, 1966.]

*Decided July 12, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, OPPENHEIMER, BARNES, McWILLIAMS and FINAN, JJ.

*Edward L. Blanton, Jr.,* with whom was *W. Jerome Offutt* on the brief, for appellants.

*Glenn C. Michel,* with whom were *Mathias, Mathias & Michel* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

In this case involving the construction of the last will and testament of Eugene A. Grove, late of Frederick County, deceased, the question on appeal is whether the estate in remainder vested as of the time of the death of the testator or at the time of the death of the life tenant. The chancellor determined the identity of those entitled to the remainder by reference to the date of the death of the testator. We think he was right.

At the time of his death on October 17, 1929, the testator was survived by his wife, Jessie B. Grove, and four daughters, Rebecca Clagett Grove, Mary Louise Grove, Grace Grove Sappington and Lillian Grove Shank. The will, a short one, provided:

> "Being of sound mind I hereby make my last will and testament as follows:
>
> To my wife Jessie B. Grove I leave every-thing I may possess as long as she remains my widow. Should she decide to marry I allow her what is due according to law. The balance I leave to my children share and share alike.
>
> I appoint my wife Jessie B. Grove my executrix without bond."

Upon completion of administration, the shares of stock in the M. J. Grove Lime Company, appraised at $22,280, and other assets of limited value, were distributed to the widow "for-

and during her life or widowhood." The widow never remarried and before she died some thirty years later, the value of the shares of stock, as the result of stock splits, stock dividends and the acquisition of the Lime Company by the Flintkote Company, had increased to a considerable fortune.

In an apparent effort to give effect to the life estate, the widow caused the stock certificates of the Grove and Flintkote companies to be registered in her name and that of her daughters as joint tenants and, occasionally although erroneously, as tenants by the entireties. Upon the death of Mary in 1946, intestate and unmarried, her jointly-owned shares were equally divided among the three surviving daughters but were still held as "joint tenants" with their mother. And when Rebecca died in 1960, also intestate and unmarried, her jointly-owned shares were given outright by the mother to the two surviving daughters and their families. These two daughters, Grace and Lillian, survived their mother.

The widow died testate in 1962. After providing for the payment of debts, funeral expenses and inheritance and estate taxes and costs, she divided the "rest, residue and remainder" of her estate into "two equal parts or shares." One share was given to R. Francis Sappington in trust for Grace. The other share was given outright to Lillian. The two daughters were appointed executrices of the will.

The federal estate tax return filed by the executrices, besides including the gift of the Rebecca Grove shares given to Grace Sappington and Lillian Shank, also listed all of the shares of stock then held jointly by the widow and her two surviving daughters. And the estate taxes were not apportioned as required by Code (1965 Rep. Vol.), Article 81, § 162. As a result, the solely owned property of the testatrix, consisting of approximately $50,000, was entirely exhausted in making payment of the estate taxes. The trustee of Grace, having questioned the executrices as to their failure to give effect to the trust created by the will of the testatrix (Jessie B. Grove) and advised them not to make a distribution to him until the will of the testator (Eugene A. Grove) had been judicially construed, filed this proceeding.

The trustee, as complainant below, contended, *firstly,* that

the will of the testator Eugene gave his widow no more than a life estate in the shares of stock owned by her husband, that upon the death of the widow all of such shares vested in the two surviving children of the testator Eugene, that none of such shares were includable in the estate of the testatrix Jessie for estate tax purposes and that, if some of the shares were taxable, the estate tax liability should have been prorated between the solely-owned and the jointly-owned shares; *secondly,* that the gift of the remainder by the testator Eugene "to my children share and share alike" created a class gift which did not vest until the termination of the life estate; and, *alternatively,* that in the event the gift vested on the death of the testator, the children took as joint tenants and in that event the two survivors took the estate as a result of the joint tenancy rather than from the joint interests created by the widow.

The executrices, as respondents, besides claiming that they were ill-advised as to what should be included in the federal estate tax return, also contended that the jointly-owned shares of stock should not have been included in the estate of the testatrix Jessie.

When the case was submitted on bill and answer, the chancellor (Schnauffer, C. J.), filed an opinion and decree holding that the widow took a life estate in all of the property of her husband; that the estate in remainder vested in his children at the time of his death; that the mother was the sole heir of the two unmarried and intestate daughters who predeceased her; that the remainder interest of the two surviving daughters passed to them under the will of their father and not as a result of the attempt of the mother to convert her life estate into a joint tenancy with her daughters; that proration of the estate taxes against such remainder interests (not being properly includable as an asset in the estate of the mother) was not required; that the gifts of the property, inherited by the mother from the deceased daughters, to the surviving daughters and their families were valid gifts in joint tenancy; and that proration of the estate taxes was required against such jointly-owned property and gifts thereof as were made within three years of the death of the mother.

Singularly, but understandably, both the trustee and the exec-

utrices earnestly contend that the chancellor erred in not deciding that the members of the class entitled to take the remainder were determinable by the death of the life tenant rather than the death of the testator. We do not agree. While the construction they urge might be the most advantageous taxwise, it would be inconsistent with the principles of construction used by the courts to ascertain the intention of the testator as expressed in the will.

Of course, the leaving of everything the testator possessed to his wife as long as she remained his widow was tantamount to a life estate. That this is so was not contested. Nor could it successfully have been, for we have consistently held that an estate during widowhood is a life estate that is subject to divestiture either upon remarriage or death whichever first occurs. See, for example, *Swope v. Swope,* 5 Gill 225 (1847); *Hammett v. Hammett,* 43 Md. 307 (1875); *Maddox v. Yoe,* 121 Md. 288, 88 Atl. 225 (1913); *Perin v. Perin,* 139 Md. 281, 115 Atl. 51 (1921).

As previously indicated, we agree with the chancellor that the remainder to the children vested in them on the death of the testator rather than on the death of the life tenant. Whenever it is possible, as it is here, we have invariably emphasized the importance of early vesting. In the most recent case—*Mercantile-Safe Deposit and Trust Co. v. Winter's Trustee,* 246 Md. 106, 228 A. 2d 289 (1967)—Judge Oppenheimer, in speaking for the Court, while recognizing that in some cases the vesting has been postponed, stated (at p. 117) that:

> "No useful purpose would be served in setting forth and discussing the varying factual situations in the cases decided by this Court after *Demill* [*v. Reid,* 71 Md. 175, 17 Atl. 1014 (1889) determining the class as of the death of the life tenant] which found the principle of construction therein set forth applicable or inapplicable. Whether or not the will before us is to be construed as containing a positive intent that the contingent remainder was to vest in John's children living at the time of the testatrix's death, we find that, at the least, there was no clear intention to the contrary

and that under the principle of early vesting, or by analogy thereto, the remainder provision is to be taken as referring only to John's children living at the time of the death of the testatrix."

Assuming a class gift, as the parties claim, we must nevertheless rely on the principles of construction applicable to situations in which the gift to persons *in esse* are fixed and definitely defined by the wording of the gift at the time it was made. These principles are well summarized in *Newlin v. Mercantile Trust Co.,* 161 Md. 622, 158 Atl. 51 (1932), where it was said (at p. 637) :

"[I]n the absence of a clear indication of a contrary intent, the time at which the membership of a class is fixed and determined, and at which the respective interests of its members become vested, and assume the character of a tenancy in common, is at the death of the testator."

Also see *Grace v. Thompson,* 169 Md. 653, 182 Atl. 573 (1936) ; *Robinson v. Mercantile Trust Co.,* 180 Md. 336, 24 A. 2d 299 (1942) ; *Chism v. Reese,* 190 Md. 311, 58 A. 2d 643 (1948) ; *Evans v. Safe Deposit & Trust Co.,* 190 Md. 332, 58 A. 2d 649 (1948) ; *Boynton v. Barton,* 192 Md. 582, 64 A. 2d 750 (1949) ; Reno, *Further Developments as to Alienability and Transmissibility in Maryland,* 15 Md. L. Rev. 193, 214-20.

Applying the principles of construction stated in *Newlin* to the wording of the will in the case at bar, it is clear that the testator had no intention to defer the vesting of the remainder until either the death or remarriage of his wife. As the gift was limited to his children and could not be added to, there was no reason to defer vesting for additional members of the group. And, in the absence of a clear intention to defer vesting in order to decrease the membership, the early vesting rule required the estate in remainder to vest in the children at the death of the testator.

The parties rely on *Stahl v. Emery,* 147 Md. 123, 127 Atl. 760 (1925), but that case is distinguishable from this by the time of vesting of the remainders. *There,* the language of the

will of the testator, devising property to his wife for life or widowhood and providing, from and after either event, for an equal division among their children, was deemed to be such as indicated a deferred vesting in those children who survived both the testator and the widow. *Here,* however, the wording of the will of the testator, bequeathing property to his wife during widowhood or for life and then to his children, clearly indicates an early vesting because the description of those to take on the marriage or death of the widow definitely identifies the children living at the death of the testator as the remaindermen. Reference was also made by the parties to *Demill v. Reid,* 71 Md. 175, 17 Atl. 1014 (1889), as authority for a deferred vesting. The *Demill* rule (which though not overruled has had limited application) was said, in *Baker v. Baylies,* 231 Md. 287, 189 A. 2d 820 (1963), to be a rule of construction only and not a binding rule of law. In any case, it is not a bar to the application of the early vesting rule in this case.

We hold, as did the chancellor, that the widow was given an estate for life and the remainder vested in the children at the time of the death of the testator.

> *Decree affirmed; the costs to be paid in equal parts by the trustee and the executrices.*