**UNITED STATES of America,**
**Appellant,**
v.
**HANCOCK BANK, Trustee of the Estate of Anna F. C. Martin, Appellee.**

**HANCOCK BANK, Trustee of the Estate of Anna F. C. Martin, Appellant,**
v.
**UNITED STATES of America,**
**Appellee.**
**No. 23711.**

United States Court of Appeals
Fifth Circuit.
Sept. 11, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, David O. Walter, Karl Schmeidler, Attys., Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for United States.

Lucien C. Gwin, Natchez, Miss., Landman Teller, Vicksburg, Miss., for Hancock Bank.

Before RIVES, COLEMAN and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Included in Anna F. C. Martin's estate when she died in 1942 was a ⅙ interest in Berkely Plantation, located in Adams County, Mississippi. Her will left most of her estate, including the ⅙ interest in Berkely Plantation to named trustees for the benefit of two life tenants, with remainder over in fee to her heirs at law.

In 1945 the surviving trustees and one life beneficiary executed an oil and gas lease, purporting to cover all of Berkely Plantation, in favor of Humble Oil & Refining Company. During 1946 the other life beneficiary and all remaindermen save one, Mabel Martin, ratified the lease. Under the lease and ratifications all royalties were payable to the trustees. Humble commenced drilling operations in 1950 which resulted in production.

Litigation concerning construction of Mrs. Martin's will was begun in the Mis-

sissippi courts in 1949 and concluded in 1957. The sole question in that litigation relevant to the 1/6 interest in Berkely Plantation was whether the proceeds of the oil lease should be paid to the life beneficiary or should be retained as corpus and invested, with only the income from such investment to be paid to the life beneficiary. There was no question in that proceeding which would have affected the validity of the lease. Nevertheless, during the course of the litigation Humble suspended payment to the trustee [1] of royalties earned and credited the royalties to an account earmarked for "the heirs or devisees of Anna F. C. Martin."

At the conclusion of the state court litigation the trustee demanded payment. Humble responded with a check for $50,949.75 representing oil royalties attributable to the entire 1/6 interest in Berkely which had been owned by Anna Martin. In making out the trust's cash basis income tax return for 1957 the trustee reported this entire amount as trust income for the year of receipt, 1957. The trustee had never reported any portion of this royalty income in the years 1950–1956. By reporting all royalties attributable to production from 1950 through 1957 as taxable income in 1957 the trustee paid a 1957 trust income tax on the royalties in the amount of $16,552.04.

Believing that a mistake had been made in the reporting of this income, on April 12, 1961, only a few days before the running of the statute of limitations for asserting a deficiency for 1957, 26 U.S.C.A. § 6501, or for filing a claim for refund for that year, the successor trustee filed a refund claim in the amount of $8,550.55 plus interest. The refund claim was accompanied by a schedule showing the actual royalties earned in each of the years 1950 through 1957, and a computation of the tax claimed by the trustee to be owed for each of the years.

The basis of the claim was that royalty income was constructively received in each year when Humble credited an amount to the special suspended payment account. According to the trustee's computations, the refund due was the difference between the amount paid in 1957 and the total of taxes owed for the years 1950–1957.

On January 15, 1962, the trustee filed an amended claim for refund and alleged that the total refund due was $15,235.26. The trustee claimed the statute of limitations barred any collection of tax deficiencies for the years 1950–1956, that the only tax due was the amount attributable to royalty payments for 1957, and that the claim for refund should not be offset by the amount of taxes owed for the years 1950–1956. The Internal Revenue Service disallowed the original claim and refused to consider the amended claim, taking the position that it was barred by the statute of limitations. The trustee sued for refund. The case was tried on stipulated facts. The district court held the royalty payments were constructively received by the trustee in each of the years 1950–1956, but the refund for overpayment in 1957 must be offset by taxes due but not paid in each of the earlier years. Judgment was entered based on 80% of the amount of the original claim.[1A]

The United States appeals and the trustee cross-appeals.

## I.   Constructive Receipt

The applicable tax regulation provides:

Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it

---

1.   By the time litigation began in the state courts, and Humble began withholding royalty payments, there was only one surviving trustee, J. G. Martin.

1A.   See footnote 2, infra.

during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.

Treas.Reg. § 1.451–2, T.D. 6723, 1964–1 Cum.Bull. 73. The doctrine of constructive receipt of income applies both to cash and accrual basis taxpayers. North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). The question presented is whether for the years 1950–1956, when Humble credited royalty payments under the lease to the special account, the payments were set apart for the trustee "so that he could have drawn upon [them] during the taxable year if notice of intention to withdraw had been given," or whether Humble's withholding of the payments amounted to a substantial limitation or restriction on the trustee's control of their receipt.[2] The finding of the district court that the trustee's right to receive the payments was not subject to substantial restrictions not being clearly erroneous,[3] we conclude its decision on this issue must be affirmed.

Humble's decision to retain the royalty payments, crediting them to a special account, was based on its feeling that "the will of Mrs. Martin [was] so difficult and uncertain of interpretation." The will was then being construed in state court. In addition, Humble labored under the misconception that J. G. Martin, with whom it corresponded concerning payment of the royalties, was only the executor of Mrs. Martin's estate. Because it felt Martin was only an executor and "an executor does not have the power and authority with respect to real property interests that he may exercise with respect to personal property unless the will expressly so provides," Humble concluded the prudent course was to retain the royalties pending the outcome of the state litigation.

With respect to the state court litigation it is stipulated that

The sole question presented by the Trustee involving the ⅛th interest in Berkely Plantation was whether the proceeds of the oil lease should be paid to the life beneficiary or should be retained as corpus and invested, with the income from such investments only to be paid to the life beneficiary. No question by any of the the parties to said proceeding was presented which would have affected the validity of said lease as to the ⅘ths of the ⅛th interest of Berkely Plantation covered by the aforesaid lease and ratifications.

Thus the considerations which led Humble to retain the royalties were not involved in the state litigation.

Humble's caution stemmed neither from doubt as to the validity of its lease nor from a contention the royalties were not due thereunder. Its only asserted basis for establishing the suspense account was doubt as to who was entitled to the payments under the will. In retrospect its belief this question would be resolved by the state litigation was ill-founded.

2. The trustee has conceded a bona fide dispute existed which would have warranted Humble to refuse to pay over to the trustee ⅕ of the amount claimed. This dispute arose from the failure of Mabel Martin, one of the remaindermen, to ratify the lease agreement with Humble. Although the trustee's claim for refund filed with the Commissioner included in its calculations Mabel Martin's share of the proceeds from the ⅛ interest in Berkely Plantation, the demand for judgment in the district court excluded her share and sought to recover an amount of tax refer-able only to the remaining ⅘ [of ⅛]. By not demanding judgment in the district court for tax referable to the ⅕ share which was disputed the trustee effectively removed this issue from the case. Therefore, we have before us only the question whether the remaining ⅘ of the trustee's claim was subject to substantial restrictions or limitations when Humble credited it to the suspense account.

3. See Estate of Broadhead v. Commissioner of Internal Revenue, 391 F.2d 841 (5th Cir. 1968); 2 Mertens, Federal Income Taxation § 10.02 (rev. ed. 1967).

"It is now well settled that income which is subject to a taxpayer's unfettered command and which he is free to enjoy at his own option is taxed to him as his income whether he sees fit to enjoy it or not." 2 Mertens, supra § 10.01, at 2; Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916 (1930); Llewellyn v. Commissioner of Internal Revenue, 295 F.2d 649 (7th Cir. 1961); Hedrick v. Commissioner of Internal Revenue, 154 F.2d 90 (2d Cir. 1946).[4] Although Humble undoubtedly placed an obstacle in the trustee's path to receiving the funds by placing them in a suspense account, the obstacle was wholly without legal basis. Humble was at all times liable to the trustee for the royalties credited to the special account. See William Parris, 20 B.T.A. 320. Under such circumstances we cannot say the district court erred in finding this did not amount to a "substantial limitation or restriction" on the trustee's control of its receipt.

Decisions by this court in Farrell v. Commissioner of Internal Revenue, 134 F.2d 193 (5th Cir. 1943), and Parr v. Scofield, 185 F.2d 535 (5th Cir. 1950), do not require a different result. In both of those cases the litigation which prevented actual receipt of the funds concerned the taxpayer's legal right to receive them. The state court litigation Humble relied on to retain the royalties involved here concerned no more than what the trustee was to do with the funds once he received them. However the state court might resolve the issue the trustee's right to receive the funds from Humble was unaffected.

## II

The district court set off the taxes due for the earlier years on the ground that it would be unfair and unjust to allow the taxpayer to recover on the amended claim, that by its actions the taxpayer had made voluntary payment of what was justly and rightfully due the United States, and that the taxpayer's concession and admission of liability for the years 1950–56 was unqualified and waived any inability of the government to claim the taxes acknowledged to be due for those years. We reach the same result though on somewhat different grounds.

The original claim (Form 843) described the holding up of the payment of the royalties and stated that as a result of the decision of the Mississippi Supreme Court the royalty income should have been reported in the years actually produced. The taxpayer attached a lengthy series of computations. These showed the oil and gas royalties credited to the trust for each year 1950–1956. For each year the depletion allowance and 100 dollar exemption were applied and the taxable income for that year calculated therefrom. For 1957 there was a similar calculation. The taxpayer then deducted from the taxes actually paid in 1957 the recalculated tax due for that year and the amount of tax stated to be owed for each year 1950 through 1956, thereby producing the claimed overpayment of $8,550.55. Interest was calculated thereon. Detailed annual reports of Humble and a thorough explanation of the background of the claim were also attached.

Thus the original claim pointed to the existence of an issue of constructive receipt. Applying principles of constructive receipt in the calculations which were part of its claim the taxpayer stated the amounts of tax owing for the years of constructive receipt. The totality of the claim unerringly pointed to a single narrow problem, the calculations were precise, and taxpayer's position was clear.

4. Although the doctrine [of constructive receipt] was doubtless conceived by the Treasury in order to prevent a taxpayer from choosing the year in which to return income by electing when he will reduce it to possession, the regulation lays down a rule of uniform application, which the taxpayer as well as the Commissioner may invoke.
Weil v. Commissioner of Internal Revenue, 173 F.2d 805, 807 (2d Cir. 1949); see Ross v. Commissioner of Internal Revenue, 169 F.2d 483, 7 A.L.R.2d 719 (1st Cir. 1948).

The amended claim raised a number of problems. It raised the issue of whether the statutes of limitations on assessments for the years 1950–1956, or any of those years, were not applicable by reason of unreported gross income exceeding 25%, and whether the statutes were for any other reasons extended or waived, e. g., fraud, acknowledgement of an indebtedness after the statute thereon has run, promise to pay a debt after the statute has run. It presented the question of the applicability of the mitigation provisions of § 1311–14 of the Internal Revenue Code of 1954 prescribing circumstances under which correction is permitted of erroneous treatment of an item in a taxable year when correction otherwise would be barred. Int.Rev.Code of 1954 §§ 1311–14, 26 U.S.C. § 1311–14 (1967). It involved the question whether equitable recoupment, by which the government has been allowed to reduce the amount of a timely filed refund by the amount of a deficiency uncollectable because of the statute of limitations, has survived in part the adoption of § 1311 et seq. and the decision in McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937).[5] It gave rise to an argument over consistency. E. g., Johnson v. Commissioner of Internal Revenue, 162 F.2d 844 (5th Cir. 1947); Orange Securities Corp. v. Commissioner of Internal Revenue, 131 F.2d 662 (5th Cir. 1942); Alamo Nat'l Bank of San Antonio v. Commissioner of Internal Revenue, 95 F.2d 622 (5th Cir. 1938).

The stipulation of the parties acknowledges that the purpose of the amended claim was to seek the advantage of a double-barreled position that unreported gross income in excess of 25% did not operate to extend the statutes of limitations against collection of tax for the years 1950 through 1956 because there had been an honest mistake and no fraud and that the mitigation provisions of § 1311 et seq. reaching items the collection of which is barred by limitations did not apply either.

We conclude that the amended claim was barred by the statute and could not be considered. United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398 (1938); United States v. Garbutt Oil Co., 302 U.S. 528, 58 S. Ct. 320, 82 L.Ed. 405 (1938); United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626 (1932); Alabama By-Products Corp. v. Patterson, 258 F.2d 892 (5th Cir. 1958); Carmack v. Scofield, 201 F.2d 360 (5th Cir. 1953). In *Andrews* the claim "was as specific as it could be made and pointed unerringly to the items the Commissioner must consider." 302 U.S. at 525, 58 S.Ct. at 319, 82 L.Ed. at 403. "[A] claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim." Id. at 524, 58 S.Ct. at 319, 82 L.Ed. at 403. The courts must ask themselves how the original claim might be expected to be viewed or acted on by those required to consider it, keeping in mind "the necessities and realities of administrative practice." United States v. Henry Prentiss & Co., supra, at 85, 53 S.Ct. at 285, 77 L.Ed. at 631.

In *Prentiss* the taxpayer filed a timely refund claim for income and excise taxes, asserting that tax could not fairly be computed by the normal method of appraising the cash value of its property, and seeking a special assessment. The Commissioner advised that a prerequisite to special assessment was a determination of taxpayer's statutory net income and invested capital and asked the taxpayer to acquiesce in or except to those items as shown in the Revenue Agent's report. The taxpayer did not except, and the Commissioner determined a special assessment was inappropriate, and prepared to deny the claim. The statute having run on refund claims taxpayer sought to amend to object to the Agent's determination of statutory

5. See Note, Equitable Recoupment in Tax Law, 42 N.Y.U.L.Rev. 536 (1967).

net income. The amendment was held barred.

The standard applied by this court in *Alabama By-Products* was: "All grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed." 258 F.2d at 900.[6]

In our view a proper conclusion does not turn on whether the government is shown to have been misled to its prejudice. The government need not prove the elements of common law estoppel to demonstrate the impropriety of the late-filed amendment. It is true that government agents became aware of some of the issues that ultimately were presented by the amended claim, but this does operate to waive the statutory period and allow acceptance of claims filed after the period has expired. United States v. Garbutt Oil Co., supra; United States v. Memphis Cotton Oil Co., supra. As *Andrews, Prentiss* and *Alabama By-Products* point out, the matter is a realistic one. How is the refund claim to be handled administratively, to what issues and points is the Commissioner's attention directed, what facts must the Commissioner ascertain, is the investigation necessitated by the claim one of broad or limited scope, does the claim indicate that the Commissioner must take affirmative action to protect the government against the running of statutory periods on assessments?[7]

The Internal Revenue Service properly declined to consider the amended claim.

Affirmed.

---

6. Compare: United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933), in which the claim was couched in generalities and made specific after the statute had run by an amendment setting forth the facts in detail; United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633 (1933), general claim, with amendment setting forth grounds in detail; Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011 (1933), amendment changing only the form of relief sought.

7. We cannot ascertain with certainty when statutes of limitations on assessments for the years 1950–1956 ran. We think it likely, although we emphasize that we do not so find, that when the original refund claim was filed on April 12, 1961, assessments by the Commissioner were barred for the years through 1953 and that the remaining years were open, and that when the amended claim was filed assessment for the year 1954 had become barred.