**OLD DOMINION BOX COMPANY, IN-CORPORATED, a Virginia corpora-tion, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 72–2285.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1973.

Decided April 18, 1973.

Edward S. Graves, Lynchburg, Va. (B. C. Baldwin, Jr., and Edmunds, Williams, Robertson, Sackett, Baldwin & Graves, Lynchburg, Va., on brief), for appellant.

Robert S. Watkins, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Crampton,

Asst. Atty. Gen., of the U. S., Meyer Rothwacks and Bennet N. Hollander, Attys., Dept. of Justice, and Leigh B. Hanes, Jr., U. S. Atty., W. D. Va., on brief), for appellee.

Before BUTZNER and FIELD, Circuit Judges, and MURRAY, District Judge.

BUTZNER, Circuit Judge:

Old Dominion Box Company, the taxpayer, appeals from a judgment of the district court denying it a refund of income taxes in the amount of $31,796.14 and interest, which it had paid following disallowance by the Commissioner of Internal Revenue of a deduction for a $75,000 charitable contribution to the Dillard Foundation in the fiscal year ending January 1, 1960. Old Dominion claims that it was entitled to the deduction under any one of three theories: (1) the foundation was a qualified charitable organization at the time the contribution was made; (2) Old Dominion was an innocent contributor to the foundation, even though the tax exempt status of the foundation was subsequently retroactively revoked; or (3) the contribution was intended for and did in fact reach the Lynchburg Fine Arts Center, a qualified charity. The jury found against the taxpayer on the first two theories, and the court ruled against it on the third. Perceiving no error, we affirm.

I

Old Dominion, a Virginia corporation located in Lynchburg, Virginia, is controlled by the Dillard family. In 1959 it sold some of its manufacturing plants and from the profits made a $75,000 contribution to the Dillard Foundation. The deduction for this contribution was disallowed following an investigation of the Dillard Foundation by the Commissioner.

The Dillard family created the Dillard Foundation in 1951 to accept donations and disburse funds for charitable purposes, and the Commissioner granted it an exemption from federal income taxes in 1953. Between 1951 and 1963, the foundation made donations in excess of $500,000 to many recognized charities. In 1965, the foundation's exemption was retroactively revoked because the Commissioner ruled that it had been operated for the benefit of private interests instead of for charitable purposes. The Commissioner determined that the foundation's dealing in certain securities was a substantial departure from its charitable functions. He took the position that these transactions were designed to enable E. S. Dillard, president of Old Dominion, to claim on his personal income tax returns inflated charitable deductions when he gave some of the securities away.[1] For its part, Old Dominion asserts that the foundation dealt in the securities in the ordinary course of investing funds, a practice permitted to all charitable foundations.

The evidence disclosed that in 1954, E. S. Dillard, who in addition to being president of Old Dominion was an officer and director of the Dillard Foundation, acquired all of the claims against the Brown Dynalube Company and all of its outstanding stock from a transferee of Dynalube's organizers for $1.00. He immediately paid Dynalube $1,828.24 and transferred to the company all of the claims that he had acquired against it. In return, he received Dynalube's six per cent debentures having a face value of $85,000. Several months later he paid Dynalube $2,500 for another debenture with a face value of $2,500. Thus, he acquired Dynalube debentures with a

1. The Commissioner had previously ruled that E. S. Dillard could not deduct the face value of the debentures which he gave to charity in 1954 and 1955 because sales of the debentures by the charities were not arms length transactions and did not establish fair market value. The Tax Court, after redetermining the value of the debentures, affirmed the Commissioner's ruling. E. S. Dillard and Jean T. Dillard, 1961 T.C.Mem. 30, 1961 P-H Tax Ct.Mem. ¶ 61,030.

total face value of $87,500 in exchange for $4,328.24.

At the time E. S. Dillard acquired the debentures he intended to give them away instead of selling them. Acting on this intention, between 1954 and 1958 he donated $59,000 in Dynalube debentures to the foundation and $26,000 to a church. He deducted the face value of these debentures as charitable contributions on his personal income tax returns.

Beginning in 1956, the foundation disposed of the debentures received from E. S. Dillard by selling them at face value, either to the Massie Construction Company or to the Minor Foundation, which then sold them to Massie. In the meantime, the church sold its $26,000 worth of debentures to Massie or to intermediaries who in turn sold them to Massie.

The Massie Construction Company and the Minor Foundation were informally linked to the Dillard Foundation through William T. Minor, Jr. His family established the Minor Foundation and his father-in-law was the owner of the Massie Construction Company. Minor served at one time or another as attorney and accountant for Old Dominion, E. S. Dillard, the Dillard Foundation, the Minor Foundation, the Brown Dynalube Company, and the Massie Construction Company.

By September 15, 1959, Massie had purchased at face value the entire $87,500 issue of Dynalube debentures— $85,000 from charities, including the Dillard Foundation, or the transferors of charities, and $2,500 directly from E. S. Dillard. Coincidentally, between 1955 and September 15, 1959, the Dillard Foundation had acquired all of the outstanding six percent debenture bonds of the Massie Construction Company, aggregating $96,350, by purchasing $81,850 at face value and receiving a donation of a $14,500 bond from E. S. Dillard. Throughout this period, the financial condition of both Dynalube and Massie ranged from marginal to precarious.

In August 1959, E. S. Dillard relinquished ownership of Dynalube by giving his stock to the company's former president. A month later, Massie exchanged its entire holdings of Dynalube debentures, aggregating $87,500, for 875 shares of Dynalube stock. The Dillard Foundation then traded all of its Massie bonds, having a face value of $96,350, to Massie in exchange for the 875 shares of Dynalube stock and $8,850 in cash. Finally, the foundation donated the 875 shares of Dynalube stock to a church, which in turn sold the stock to the former president of Dynalube for $87.50.

II

Section 501 of the Internal Revenue Code of 1954 [2] exempts from taxa-

---

2. Int.Rev.Code of 1954, § 501(c)(3) describes an exempt organization:

"Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office."

Taxpayers are entitled to deduct contributions to exempt charitable foundations by virtue of Int.Rev.Code of 1954, § 170(a)(1), which provides:

"There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year . . ."

Int.Rev.Code of 1954, § 170(c)(2) describes a qualified charity:

"For purposes of this section, the term 'charitable contribution' means a contribution or gift to or for the use of—

. . . . .

"A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States;

tion a foundation organized and operated for charitable purposes. The district court properly instructed the jurors that in order for them to hold that the foundation was not operating for charitable purposes they must find that its trading in Dynalube and Massie securities was a substantial part of its activities or diverted a substantial part of its resources. It submitted the case on the following special interrogatories, which the jury answered in the negative:

"1. Did the Dillard Foundation operate at all times during the twelve-month period ending November 30, 1959 for religious, charitable, and educational purposes?

"2. If the answer to question 1 is 'No,' was the Dillard Foundation operating for religious, charitable, and educational purposes when the gift of $75,000.00. was pledged on October 30, 1959?"

█ The role played by the foundation in inflating the value of the Dynalube debentures reported by E. S. Dillard as charitable deductions on his personal income tax return amply supports the jury's finding that during the times pertinent to this case, the foundation was not operating for charitable purposes. The foundation's substantial non-charitable activities destroyed its entitlement to an exemption, regardless of its other charitable undertakings. *Cf.* Better Business Bureau v. United States, 326 U.S. 279, 283, 66 S.Ct. 112, 90 L.Ed. 67 (1945). Moreover, the foundation's exemption cannot be preserved on the ground that its dealings in Dynalube debentures generated income for other charitable gifts. Stevens Bros. Foundation, Inc. v. Commissioner,

324 F.2d 633, 639 (8th Cir. 1963), cert. denied, 376 U.S. 969, 84 S.Ct. 1135, 12 L.Ed.2d. 84 (1964); *cf.* University Hill Foundation v. Commissioner, 446 F.2d 701, 703 (9th Cir. 1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972); United States v. Community Services, Inc., 189 F.2d 421, 425 (4th Cir. 1951). It is, therefore, clear that Old Dominion cannot recover on the ground that the Dillard Foundation was an exempt charity.

### III

█ The Commissioner in the exercise of his sound discretion may retroactively revoke an exemption. Int.Rev. Code of 1954, § 7805(b); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 184 (1957). The Commissioner, however, has provided by regulation that the charitable deductions of innocent contributors to an organization whose exemption has been forfeited will not be retroactively disallowed. Treas. Reg. § 1.503(e)–1 (1958); Rev.Proc. 64–25, 1964–1 Cum.Bull. 694. In this case, the Commissioner's ruling revoking the foundation's exemption expressly limited its retroactive effect to protect innocent contributors, but it stated that this would not preclude disallowance of deductions made by contributors who were aware of the foundation's activities.

█ Answering a special interrogatory, the jury found that Old Dominion was not an innocent contributor at the time that it pledged the $75,000 to the foundation. This finding, we conclude, is amply supported by the evidence. D. H. Dillard, chairman of Old Dominion's board, E. S. Dillard, the company's pres-

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

(C) no part of the net earning of which inures to the benefit of any private shareholder or individual; and

(D) no substantial part of the activities of which is carrying on prop-

aganda, or otherwise attempting, to influence legislation.

"A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B)."

ident, and W. C. Pritchett, its vice president for finance, were all officers and directors of the foundation. William T. Minor, Jr. served as attorney and accountant for both the company and the foundation. E. S. Dillard and Pritchett played an active role in the foundation's Dynalube-Massie transactions, and E. S. Dillard was the direct beneficiary of these activities. D. H. Dillard died before this case was tried, and there is no direct testimony concerning his knowledge. The evidence disclosed, however, that during the time the foundation was dealing in Dynalube and Massie securities, he closely followed the foundation's day to day operations and no significant action could be taken without his approval. From this the jury could infer that he, too, was aware of the activities that led to the revocation of the foundation's exemption.

■ Invoking familiar principles of agency, Old Dominion argues that its officers' knowledge of the foundation's affairs cannot be imputed to the company because they were not acting within the scope of their employment while engaged in the foundation's business. This issue raised a factual question, which the trial court submitted to the jury with appropriate instructions. The jury's rejection of Old Dominion's position is amply supported by the record. Old Dominion and the foundation were related by more than interlocking directorates. The officers of the foundation used the company's facilities to transact the foundation's business, and they performed services for the foundation on company time. The jury was entitled to infer that Old Dominion acquiesced in and approved the participation of its officers in the foundation's work.

Because of the jury's finding, Old Dominion is not entitled to take advantage of the exception the Commissioner made for innocent contributors in the revocation ruling.

## IV

■ Old Dominion's third ground for recovery is based on the government's concession during the trial that the company's contribution, though made to the foundation, was intended by the company for the Lynchburg Fine Arts Center, an admitted charity, and that the foundation transmitted the contribution to the Center. We do not reach the merits [3] of this claim, for, in agreement with the district judge, we hold that it is barred as untimely.

Old Dominion's claim for refund stated:

"The disallowance in the tax year ended 1/1/60 of $75,774.69 of charitable contributions made by the taxpayer to Dillard Foundation, Inc. was improper for two reasons: First, the donee was a qualified charitable entity, and, second, the taxpayer innocently made its contributions in good faith in reliance on the donee's charitable status."

The company's complaint originally was based on the two theories set forth in this claim. While the suit was pending in its pretrial stages, but after the period of limitations for an administrative refund claim had run,[4] the company amended its complaint to allege:

"4A. The contribution of $75,000 was intended by the plaintiff for and

---

3. On the merits, Old Dominion relies on Faulkner v. Commissioner, 112 F.2d 987 (1st Cir. 1940). In response, the government asserts that *Faulkner* is distinguishable on its facts and that the result urged by Old Dominion would negate the provisions of § 170(a)(1) and (c).

4. Int.Rev.Code of 1954, § 6511(a) sets forth the limitations period for filing a claim for refund:

"Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment

was duly received by Lynchburg Fine Arts Center, Inc., which was at all relevant times a charitable corporation within the meaning of said Section 501(c)(3), contributions to which were deductible for Federal Income Tax purposes."

■ Before instituting an action to recover taxes, a taxpayer must file a claim for refund setting forth the grounds for recovery.[5] Despite the omission of any reference to the foundation as a conduit for the contribution to the Fine Arts Center in its administrative claim for refund, Old Dominion insists that it has complied with the Code. It asserts that its orginal claim was adequate to make the Commissioner aware of the theory set forth in its amended complaint for the following reasons: the original claim stated that the gift was made to a qualified charity; the foundation's practice was not to retain donations, but merely to serve as a conduit to qualified recipients; on audit, the Commissioner had all of the documents relating to the transactions at his disposal;

these documents established that the donation was intended for and did in fact reach the Lynchburg Fine Arts Center, which is a qualified charity. Moreover, Old Dominion contends that its amended complaint was sufficient to present the issue because the amendment did not vary the theory of recovery, but simply specified the facts in greater detail.

The cases interpreting the requirement of a timely claim for refund do not support Old Dominion's position. In United States v. Andrews, 302 U.S. 517, 524, 58 S.Ct. 315, 319, 82 L.Ed. 398 (1938), the Court said:

"Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim."

Applying this rule, we recently held in Sappington v. United States, 408 F.2d 817, 819 (4th Cir. 1969):

"A claim seeking refund upon one asserted fact situation may not be amended out of time so as to require an investigation of matters not germane to the original claim . . . While an amendment which only makes more definite matters already

of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid."

The Commissioner has expanded on this requirement in Treas.Reg. § 301.6402–2 (b)(1) (1954):

"No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts

sufficient to apprise the Commissioner of the exact basis thereof . . ."

Old Dominion made the final payment of the assessment on October 1, 1965. The claim for refund was filed with the Commissioner on September 21, 1967, and the complaint was amended to set forth the new grounds on July 5, 1972.

5. Int.Rev.Code of 1954, § 7422(a) provides that "[n]o suit . . . shall be maintained . . . for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed . . . until a claim for refund or credit has been duly filed . . ." See Treas. Reg. § 301.6402–2 (1954).

within the Commissioner's knowledge is permissible, the fact of specification of the original claim tends to confine the administrative investigation to that issue."

The principles stated in *Andrews* and *Sappington* govern this issue. The original claim for refund was not general. It specified that the foundation was a qualified charity and that the taxpayer was an innocent contributor. It contained no mention of the Fine Arts Center and no suggestion that Old Dominion was relying on the theory that the foundation served only as a conduit to pass the contribution to an exempt organization. Indeed, the record supports the opposite inference, because the facts alleged in the amendment were inconsistent with the original claim which named the foundation as donee. For this reason it is apparent that the amendment was an impermissible shift to a new and different ground. United States v. Garbutt Oil Co., 302 U.S. 528, 531, 58 S.Ct. 320, 82 L.Ed. 405 (1938).

▆ Nor can Old Dominion prevail simply because the records documenting the purpose of the contribution were examined by the agent who audited the claim. The agent testified that although the documentary evidence pertaining to the contribution was available, its significance as a basis for Old Dominion's claim was not apparent to him. Furthermore, during the course of his audit no representative of either the foundation or the company explained the pertinence of the records to the claim, and he did not learn of the conduit theory until just before trial. The Commissioner, through his agents, cannot be expected to formulate from raw facts a taxpayer's unarticulated claim. *Cf.* Stoller v. United States, 444 F.2d 1391, 1393 (5th Cir. 1971).

▆ Old Dominion urges that the failure of the government to oppose

amendment of the complaint constitutes a waiver of any objection to the amendment's basis for recovery. We reject this contention for two reasons. First, because, as we have previously held, the amendment constituted a new ground for recovery, no officer of the government could waive the statute of limitations. *See* United States v. Garbutt Oil Co., 302 U.S. 528, 533, 58 S.Ct. 320, 82 L.Ed. 405 (1938). Second, the amendment was made to paragraph 4 of the complaint, which dealt only with factual matters. Paragraph 10, which set forth the grounds for recovery, remained unamended. When the government learned that the amendment was a ground on which Old Dominion sought recovery, it moved to strike the amendment because it varied from the claim for refund. It is, therefore, clear that the government's conduct did not constitute a waiver.

The judgment of the district court is affirmed.